No. 2--95--1286

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF           )  Appeal from the Circuit Court

ILLINOIS,                            )  of Lake County.

                                     )

     Plaintiff-Appellee,             )

                                     )

v.                                   )  No. 95--CF--167

                                     )

JESSIE J. ORSBY, JR.,                )  Honorable

                                     )  Henry C. Tonigan III,

     Defendant-Appellant.            )  Judge, Presiding.

_________________________________________________________________

                                     

     JUSTICE RATHJE delivered the opinion of the court:

     Following a jury trial, the defendant, Jessie J. Orsby, Jr.,

was found guilty of the offenses of unlawful possession of a

controlled substance, unlawful possession of a controlled substance

with intent to deliver, and armed violence.  The trial court

imposed concurrent sentences of 20 years' imprisonment on the

offense of unlawful possession of a controlled substance with

intent to deliver and 10 years' imprisonment on the offense of

armed violence.  No conviction was entered and no sentence was

imposed on the possession offense.  The defendant appeals.

     On appeal, the defendant raises the following issues:  (1)

whether the stop and search of his vehicle violated his rights

under the fourth amendment; (2) whether the trial court's denial of

his motion for production of the informant and an in camera

inspection of certain police records pertaining to the defendant

and the informant violated his rights under the sixth amendment;

(3) whether the defendant was proved guilty of armed violence

beyond a reasonable doubt; (4) whether the strip search of the

defendant violated his rights under the fourth amendment and

article 1 of the Illinois Constitution;  (5) whether the defendant

was denied the effective assistance of counsel; and (6) whether the

defendant's sentence is excessive.  The State also raises an issue

as to whether the defendant was properly sentenced for the offense

of armed violence.  We affirm the defendant's convictions but

vacate his sentence and remand for a new sentencing hearing.

     On January 18, 1995, Trent Robinson and Morris Wade, officers

with the narcotics division of the North Chicago police

department's anti-crime unit, were on duty, driving an unmarked

police vehicle.  It is not disputed that the defendant had been a

target of an ongoing narcotics investigation being conducted by

these officers.  Officer Robinson had utilized a confidential

informant to execute controlled narcotics buys from the defendant. 

One such buy had occurred earlier on January 18, 1995.  

     At approximately 7:15 p.m., Officers Robinson and Wade

recognized the defendant driving a green Chevrolet automobile.  The

officers proceeded to follow the defendant's vehicle.  After

following the defendant for 2½ blocks, they observed the

defendant's vehicle swerve, fail to signal for a turn and that the

vehicle had only one headlight.  The officers requested assistance

from Officer Darcy Brown for the purposes of effecting a traffic

stop.  Officer Brown effected a traffic stop of the defendant's

vehicle.  As Officer Brown approached the driver's side of the

vehicle, she observed the handle of a small caliber handgun located

next to the defendant's right thigh.  Officer Brown confiscated the

weapon while Officer Robinson secured the defendant and placed him

under arrest.  At the scene, the defendant's vehicle was searched

by a police dog trained in narcotics detection.  The dog bit or

scratched at an area near the steering column.  The officers seized

the gun and some ammunition but found no narcotics.

     The defendant and the vehicle he was driving were transported

to the North Chicago police department.  A further search of the

vehicle revealed cocaine in a plastic bag in an area behind the

dashboard to the right of the steering column.  A pat-down search

of the defendant revealed cocaine.  A further search of the

defendant's clothing revealed packaged cocaine in the left side of

the defendant's underwear.

     According to the defendant, at the time of the stop, he told

the officers that he was taking his handgun to the practice range

for target shooting.  He denied having possessed or sold narcotics. 

The defendant further testified that he had been harassed by

Officer Robinson over a long period of time.

     The defendant contends, first, that the stop of his vehicle

and his subsequent arrest were a pretext to search his vehicle and

his person and violated his rights against unreasonable search and

seizure pursuant to the fourth amendment of the United States

Constitution.  The defendant argues that where the purpose of a

traffic stop is a pretext for a search or detention rather than a

traffic violation, such a search or detention is improper.  People

v. Mendoza, 234 Ill. App. 3d 826, 837 (1992).  He further argues

that evidence discovered and seized by means of a search subsequent

to a pretextual arrest is inadmissible, excluded in order to deter

police misconduct and prevent law enforcement officers from being

rewarded for their subterfuge.  People v. Alvarez, 243 Ill. App. 3d

933, 937 (1993).

     In Whren v. United States, 517 U.S. ___, 135 L. Ed. 2d 89, 116

S. Ct. 1769 (1996), the United States Supreme Court rejected the

argument that traffic offenders may challenge probable cause stops

generated by hidden reasons unrelated to enforcing the rules of the

road.  Whren, 517 U.S. at ___, 135 L. Ed. 2d at 101, 116 S. Ct. at

1777.  Ulterior motives do not invalidate police conduct that is

justified on the basis of probable cause to believe that a

violation of the law has occurred.  Whren, 517 U.S. at ___, 135 L.

Ed. 2d at 98, 116 S. Ct. at 1774; People v. Thompson, 283 Ill. App.

3d 797, 798 (1996).  The constitutional reasonableness of a traffic

stop does not depend on the actual motivations of the police

officers involved.  Whren, 517 U.S. at ___, 135 L. Ed. 2d at 98,

116 S. Ct. at 1774; Thompson, 283 Ill. App. 3d at 798.

     In the case before us, Officers Robinson and Wade observed

that defendant's vehicle swerved, failed to signal for a turn, and

had only one headlight.  Minor violations to be sure but violations

sufficient enough to give the officers probable cause to believe

that traffic laws of this State were being violated.  See Thompson,

283 Ill. App. 3d at 798.

     A similar situation occurred in Thompson.  In that case, the

police effected a stop of the Thompsons' van for a defective rear

brake light.  As the reviewing court acknowledged, the stop was not

motivated by a desire to enforce the rules of the road but rather

by an anonymous tip that the van contained alcohol and drugs.  On

the basis of the decision in Whren, the Thompson court held as

follows:

     "Even though the traffic offense masked other reasons for the

     stop unsupported by probable cause, ulterior motives cannot

     make otherwise lawful conduct illegal.  The pretextual nature

     of the stop did not invalidate it.  The police had probable

     cause for the stop.  The inquiry ends there."  Thompson, 283

     Ill. App. 3d at 798-99.

     The defendant responds that this case differs from Whren in

that in Whren the officers stopped the vehicle in which Whren was

a passenger for a traffic violation and then discovered the

presence of contraband in plain view.  Thus, in Whren, the sole

motivation for the stop was the traffic violation, whereas in the

present case the officers' motivation in stopping the defendant's

vehicle was the information they had received regarding the

defendant's drug-related activities.  However, the reasonableness

of the traffic stop does not depend on the actual motivations of

the individual officers involved.  Whren, 517 U.S. ___, 135 L. Ed

2d 89, 116 S. Ct. 1769.

     Since Officers Robinson and Wade had probable cause to effect

a traffic stop of the defendant's vehicle, the defendant's rights

under the fourth amendment were not violated.

     Next, the defendant contends that the trial court erred in

denying his motion for production of the informant and for an in

camera inspection of the police records of the investigation of the

defendant and prior transactions involving the confidential

informant.  The defendant argues that the denial of the production

request impaired his ability to present a defense.  Specifically,

the defendant argues that production of the confidential informant

would have given the defendant an opportunity to impeach the

officers' testimony that there was an independent basis for

stopping and searching the defendant's vehicle, as well as showing

the extreme bias and prejudice of the officers against the

defendant.  The defendant also argues that such information would

have enabled him to rebut testimony as to previous controlled drug

buys involving him.

     It is well settled that strong public policy reasons favoring

the nondisclosure of an informant must be balanced against a

defendant's need for the disclosure in order to prepare his defense

or where the disclosure is essential for a fair determination of a

cause.  People v. McBee, 228 Ill. App. 3d 769, 773 (1992). 

However, if the issue is one of probable cause, and guilt or

innocence is not at stake, the nondisclosure of an informer's

identity is not error.  McBee, 228 Ill. App. 3d at 773.  Whatever

the circumstances, the defendant must show a need for the

disclosure.  McBee, 228 Ill. App. 3d at 773.  

     We have previously held that, so long as the officers had

probable cause to effect a stop of the defendant's vehicle, an

ulterior motive on their parts does not effect the validity of the

stop of the vehicle.  Whren, 517 U.S. at ___, 135 L. Ed. 2d at 98,

116 S. Ct at 1774; Thompson, 283 Ill. App. 3d at 798-99.  Thus,

there would be no basis for any impeachment of the officers on that

point.   Moreover, the jury was made aware that the officers might

have been biased or prejudiced against the defendant based upon the

officers' own testimony that there was an ongoing investigation of

possible drug dealing by the defendant.  It was also clear that the

officers were seeking an opportunity to search the defendant and

his vehicle.

     Finally, the defendant does not offer any explanation as to

how production of the police records or the confidential informant

would allow him to rebut the testimony about the prior drug

transactions involving the defendant.  Even if the police records

or the confidential informant would somehow cast doubt on the

previous drug transactions involving the defendant, they in no way

affect the validity of the stop which was based upon probable

cause, regardless of additional motives in the minds of the

officers.  

     As the defendant has failed to show a need for the disclosure

of the informant or the police records of any investigation of the

defendant, the trial court did not err in denying the defendant's

motion for production of the police records and the confidential

informant.

     Next, the defendant contends that he was not proved guilty of

armed violence beyond a reasonable doubt.  

     "A person commits armed violence when, while armed with a

dangerous weapon, he commits any felony defined by Illinois Law." 

720 ILCS 5/33A--2 (West 1994).  "A person is considered armed with

a dangerous weapon *** when he or she carries on or about his or

her person or is otherwise armed with a Category I, Category II, or

Category III weapon."  720 ILCS 5/33A--1(a) (West 1993).  A

handgun, such as the one seized from the defendant's vehicle, is a

"Category I weapon."  720 ILCS 5/33A--1(b) (West 1994).

     The defendant argues that he could not be found guilty of

armed violence beyond a reasonable doubt because the weapon was

unloaded and there was no evidence that he attempted to access or

use the weapon.  

     The armed violence statute was enacted in 1967 as a response

to the growing incidence of violent crime.  People v. Condon, 148

Ill. 2d 96, 109 (1992); People v. Alejos, 97 Ill. 2d 502, 507-08

(1983).  The intended purpose of the armed violence statute is to

deter felons from using dangerous weapons so as to avoid the deadly

consequences which might result if the felony victim resists. 

Condon, 148 Ill. 2d at 109.  For the purpose of the statute to be

served, it is necessary that the defendant have some immediate

access to or timely control over the weapon.  Condon, 148 Ill. 2d

at 110.  Thus, where the defendant was found in the kitchen where

there were no guns, the fact that guns were located in other parts

of the house did not support a conviction of armed violence since

the defendant did not have immediate access to the guns.  See

Condon, 148 Ill. 2d at 110.

     In this case, Officer Brown observed the handgun located next

to the defendant's thigh.  Thus, the defendant here had immediate

access to the weapon.  However, defendant suggests that an unloaded

weapon does not grant the immediate access or timely control

envisioned by the legislature when enacting the armed violence

statute.  This precise question has never previously been

addressed.  However, prior cases provide a basis for resolving this

issue.

     We observe, first, that the statute makes no requirement that,

for a handgun to qualify as a dangerous weapon, it must be loaded. 

See 720 ILCS 5/33A--1 (West 1994).  However, the defendant argues

that the mere physical presence of a weapon is not within the

meaning of the armed violence statute.  See People v. Bond, 178

Ill. App. 3d 1020, 1023 (1989).  The vast majority of cases

interpreting this statute involve either loaded weapons or a

combination of loaded and unloaded weapons.  See Condon, 148 Ill.

2d 96; Alejos, 97 Ill. 2d 502; People v. Hernandez, 229 Ill. App.

3d 546 (1992); Bond, 178 Ill. App. 3d 1020.

     Although not directly on point,  People v. King, 155 Ill. App.

3d 363 (1987), does provide some guidance.  In that case, the

police were admitted by King to her apartment for purposes of

executing a search warrant.  Upon entering a bedroom, the police

discovered contraband and a gun on a coffee table three feet from

the bed.  The gun was unloaded, and no ammunition was found.  King

was convicted of armed violence based upon the presence of the

weapon.  On appeal, King argued that a jury instruction that stated

that the mere presence of the pistol was sufficient to find that

she was armed with a dangerous weapon misstated the law and should

not have been given.  King, 155 Ill. App. 3d at 368.  

     The reviewing court reversed King's conviction and ordered a

new trial.  The court agreed with King that the legislature did not

intend that a defendant be convicted of armed violence simply

because a weapon was located anywhere in the home.  The court

further explained as follows:

     "Presence of the weapon, for purposes of the armed violence

     statute, denotes not only physical existence of the weapon,

     but characterizes the relationship between the weapon and the

     person.  Although the statute does not require the use or even

     the threatened use of the weapon, it does require that the

     person carry the weapon on or about his person or be otherwise

     armed.  This requirement emphasizes the quality of the

     relationship between the person and the weapon or the

     potential hazard which exists when a person is armed while

     committing a felony.  The mere physical existence of the

     weapon without knowledge or control, including immediate

     access to the weapon, is not within the meaning of the armed

     violence statute."  King, 155 Ill. App. 3d at 369.

We note that the decision in King did not turn on whether or not

the weapon was loaded.

     As we have previously observed, the legislature could have but

did not require that a weapon, such as a handgun, be loaded in

order to qualify as a dangerous weapon.  It is not our function to

declare that the legislature did not mean what the plain language

of the statute imports.  People v. Haron, 85 Ill. 2d 261, 268

(1981).  In the present case, the handgun was located next to the

defendant's thigh, giving him immediate access and control over the

weapon.  In addition, Officer Brown testified that the handgun

recovered from the defendant was a Raven 25-caliber and that in the

defendant's coat pocket was a clip with six 25-caliber rounds in

it.  Thus, the defendant had immediate access to an unloaded weapon

and immediate access as well to ammunition capable of discharge

from the weapon in question.  Together, these two facts establish

that the defendant had immediate access to a weapon as contemplated

by the legislature in enacting the armed violence statute. 

Therefore, we conclude that the defendant was found guilty of armed

violence beyond a reasonable doubt. 

     Next, the defendant contends that he was subjected to a strip

search that was not performed according to Illinois law and,

therefore, his rights were violated under the both the United

States and Illinois Constitutions.

     The State argues that the defendant failed to raise this

argument in his post-trial motion, and, therefore, the argument is

waived.  However, the motion for a new trial does raise an issue as

to police procedures followed in the "strip search" of the

defendant at the police station.  Further, during the hearing on

the post-trial motions, defense counsel advised the trial court

that the defendant wished to argue pro se the appropriateness of or

unlawfulness of the strip search in this case.  We therefore will

not consider the issue waived.

     Illinois law defines a "strip search" in part as "having an

arrested person remove or arrange some or all of his or her

clothing so as to permit a visual inspection of the ***

undergarments of such person."  725 ILCS 5/103--1(d) (West 1994). 

The statute further prescribes the proper procedure to be followed

when a strip search is performed as follows:

          "(f)  Every peace officer or employee of a police

     department conducting a strip search shall:

               (1)  Obtain the written permission of the police

          commander or an agent thereof designated for the purposes

          of authorizing a strip search in accordance with this

          Section.

               (2)  Prepare a report of the strip search.  This

          report shall include the written authorization required

          by paragraph (1) of this subsection (f), the name of the

          person subjected to the search, the names of the persons

          conducting the search, and the time, date and place of

          the search.  A copy of the report shall be provided to

          the person subject to the search."  725 5/130 (f)(1),

          (f)(2) (West 1994).  

     Strip searches are not per se illegal or unconstitutional. 

See People v. Seymour, 84 Ill. 2d 24, 39-40 (1981); United States

v. Klein, 522 F.2d 296, 300-01 (1st Cir. 1975).  The defendant

alleges only that the strip search in this case was not performed

according to the above-stated statutory provisions.  While we do

agree that the defendant here was subjected to a strip search, we

agree with the State that the defendant has failed to establish in

what way the strip search of the defendant failed to comply with

Illinois law.  At the hearing for the defendant's post-trial

motion, defense counsel enumerated several violations indicating

that the record reflected these violations.  In his brief, the

defendant cites to several places in the record in support of these

alleged violations.  However, a review of these cited portions of

the record does not support the defendant's argument that the strip

search in this case was improperly conducted.

     We, therefore, conclude that the defendant has waived any

issue as to the validity of the strip search since he has failed to

specify how the statute was violated in this case.  See 155 Ill. 2d

R. 341(e).  

     Next, the defendant contends that he was denied the effective

assistance of counsel.  The defendant argues that defense counsel

was ineffective in that he failed to challenge the

constitutionality and the conformity to Illinois law of the strip

search performed on the defendant.

     To prevail on a claim of ineffective assistance of counsel, a

defendant must show that counsel's representation fell below an

objective standard of reasonableness, measured by reference to

prevailing professional norms and that the substandard

representation so prejudiced the defendant as to deny him a fair

trial.  People v. Palmer, 162 Ill. 2d 465, 475 (1994).  A

defendant's failure to make the requisite showing of either

deficient performance or sufficient prejudice defeats an

ineffectiveness claim.  Palmer, 162 Ill. 2d 465.  The effective

assistance of counsel refers to competent, not perfect,

representation, and there is a strong presumption that counsel's

performance fell within a wide range of reasonable professional

assistance.  Palmer, 162 Ill. 2d at 476.

     " '[A] court need not determine whether counsel's performance

was deficient before examining the prejudice suffered by the

defendant as a result of the alleged deficiencies. *** If it is

easier to dispose of an ineffectiveness claim on the ground of lack

of sufficient prejudice, which we expect will often be so, that

course should be followed.' "  People v. Albanese, 104 Ill. 2d 504,

527 (1984), quoting Strickland v. Washington, 466 U.S. 668, 697, 80

L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70 (1984).

     To demonstrate prejudice, a defendant must show a reasonable

probability that, but for counsel's unprofessional errors, the

result of the proceedings would have been different.  People v.

Owens, 129 Ill. 2d 303, 309 (1989); Strickland, 466 U.S. at 694, 80

L. Ed. 2d at 698, 104 S. Ct. at 2068.

     Even had defense counsel challenged the strip search of the

defendant and successfully moved to suppress the evidence of the

cocaine found as a result of that search, the result here would not

have been different.  Apart from the cocaine found during the strip

search of the defendant, the police seized 1.61 grams of a

substance containing cocaine from the defendant during an

unchallenged pat-down search at the police station and 25.38 grams

of a substance containing cocaine from the defendant's vehicle. 

Even without the substance containing cocaine seized from the

defendant during the strip search, there was still sufficient

evidence of the presence of cocaine to support the defendant's

convictions.  

     Thus, the defendant has failed to establish that "but for

trial counsel's errors," the result reached by the jury in this

cause would have been different.  We conclude therefore that the

defendant was not denied the effective assistance of counsel.  

     Finally, the defendant contends that his concurrent sentences

of 20 years' imprisonment for the offense of unlawful possession of

a controlled substance with intent to deliver and 10 years'

imprisonment for the offense of armed violence are excessive.  The

defendant argues that, in imposing the above sentences, the trial

court focused only on the deterrent factor and never considered the

defendant's rehabilitative potential.  The defendant points to his

age, 22 years, his relatively minor previous criminal history, the

success he achieved as a high school athlete, his pursuit of higher

education, and his good relationship with his family, all of which

he argues were ignored by the trial court.  We disagree.

     In imposing the sentences in this case, the trial court  noted

that the defendant's prior record of criminal offenses was

relatively minor compared with the instant offenses.  It further

noted that the defendant had stated that he had no drug or alcohol

abuse problem that might have accounted for the defendant's

commission of these crimes.  The trial court then stated as

follows:

          "It is surprising on the plus side for the defendant he

     should have everything going for him in the world in terms of

     being a good student and an excellent athlete, continuing on

     and finding his way through college.  I've considered the age

     of the defendant, his support system at home, considered that

     in determining his likelihood for committing these offenses in

     the future and his likelihood for rehabilitation in the

     future.  Certainly whatever sentence the Court impose [sic]

     must be a significant sentence.  ***

          This is not a standard story of someone who's down and

     out and has nothing going for him or her.  You are an

     intelligent, astute person before the court.  And I've

     considered that in terms of the likelihood to learn from what

     in fact will be a severe lesson for him to serve.  To impose

     a sentence at the minimum range, given the background and the

     prior police contacts, would not be appropriate to merely

     impose a 15-year sentence.  At the same time I don't believe

     that the upper range argued by the State is appropriate or

     necessary in this case."

Thereupon, the trial court imposed the sentences indicated above.

     A trial court's sentencing decisions are entitled to great

deference and weight.  People v. Streit, 142 Ill. 2d 13, 18-19

(1991).  A trial judge is in a far better position than an

appellate court to fashion an appropriate sentence because such

judge can make a reasoned judgment based upon firsthand

consideration of such factors as the defendant's credibility,

demeanor, general moral character, mentality, social environment,

habits, and age.  Streit, 142 Ill. 2d at 19.

     The discretion of a trial court in making sentencing decisions

is not totally unbridled.  The standard of review is whether a

trial court has abused its discretion in imposing a sentence; if it

has, the sentence may be altered upon review.  Streit, 142 Ill. 2d

at 19; 134 Ill. 2d R. 615(b)(4).  When reviewing courts examine the

propriety of sentences imposed by trial courts, they should proceed

with great caution and care.  Streit, 142 Ill. 2d at 19.  A

reviewing court must not substitute its judgment for that of a

sentencing court because it would have weighed the factors

differently.  142 Ill. 2d at 19.

     The remarks of the trial court in this case indicated that,

contrary to the defendant's argument, it did contemplate the

defendant's rehabilitation potential in fashioning the sentences in

this case.  Therefore, we will not disturb those sentences on that

basis.

     However, we observe that, during the sentencing hearing in

this case, both the parties and the trial court referred to a

minimum sentence of 15 years' imprisonment.  However, it is not

entirely clear from the record to which offense the parties

believed the minimum 15-year sentence applied.  Further, the State

now argues that the trial court erred in imposing a 10-year

sentence for the offense of armed violence since a conviction of

armed violence while possessing a Category I weapon, in this case

a handgun, carries a minimum sentence of 15 years' imprisonment. 

720 ILCS 5/33A--3(a) (West 1994).  

     We agree with the State that the defendant was improperly

sentenced for the offense of armed violence.  The State requests

that we correct the sentencing order to reflect a sentence of 15

years' imprisonment on the charge of armed violence.  See People v.

Arna, 168 Ill. 2d 107, 113 (1995) (a sentence that does not conform

to a statutory requirement is void, and the appellate court has the

authority to correct it at any time); see also People v. Richmond, 

278 Ill. App. 3d 1042, 1048 (1996).

     We decline merely to correct the sentencing order in this case

because it appears that the trial court may have been under the

impression that the minimum sentence of imprisonment for possession

of not less than 15 nor more than 100 grams of a substance

containing cocaine with intent to deliver was 15 years.  The State

acknowledges in its brief that that offense carries a sentencing

range of between 6 and 30 years' imprisonment.  720 ILCS

570/401(a)(2)(A) (West 1994).  While the State argues that the 20-

year sentence imposed was within the sentencing range, we are not

convinced that the 20-year sentence imposed was not the result of

the trial court's misapprehension that the minimum for that offense

was 15 years' imprisonment.

     Clearly the trial court intended to impose a sentence of more

than the minimum.  But, assuming it believed that the minimum was

15 years' imprisonment, the 20-year sentence it imposed was much

closer to what it may have believed was the minimum sentence than

it would be to the actual minimum of 6 years' imprisonment. 

Although it is not quite clear from the record which offense the

parties and the trial court were referring to as having a minimum

sentence of 15 years, it seems unlikely that the trial court was

referring to the armed violence offense as it then imposed, albeit

erroneously, a 10-year sentence of imprisonment for that offense.

     We therefore affirm the defendant's convictions of armed

violence and possession of a controlled substance with intent to

deliver.  However, we vacate the sentences imposed in this case and

remand for a new sentencing hearing.  At this sentencing hearing,

it would be helpful for all concerned if the appropriate statutory

sentencing ranges, including any applicable enhancement or extended

term provisions, would be set forth for each offense for which the

defendant is to be sentenced.  

     The defendant's convictions are affirmed; his sentences are

vacated and the cause remanded for a new sentencing hearing in

accordance with this court's instructions.

     Affirmed in part and vacated in part; cause remanded.

     McLAREN, P.J., and GEIGER, J., concur.