(No. 70295

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TIMOTHY CONDON, Appellee.

*Opinion filed March 12, 1992.—Rehearing denied June 1, 1992.*

MILLER, C.J., dissenting.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Kenneth R. Boyle, Norbert J. Goetten, William L. Browers, and Mary Beth Burns, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

George P. Lynch, of Chicago, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Following a hearing in the circuit court of Du Page County, defendant's motion to suppress evidence found in his residence was denied by the trial court. After a bench trial, defendant, Timothy Condon, was found guilty of counts of armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2), unlawful possession with intent to deliver cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)), unlawful possession with intent to deliver cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)), and unlawful delivery of controlled substances (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)). Defendant received concurrent sentences of 12 years on the armed violence count, 3 years on the unlawful possession of cannabis count, 12 years on the unlawful possession of cocaine

count, and 12 years on the unlawful delivery of cocaine count.

Defendant appealed, and the appellate court reversed the order of the circuit court denying defendant's motion to suppress evidence, reversed defendant's armed violence conviction, and also reversed and remanded for a new trial the possession with intent to deliver cocaine, possession with intent to deliver marijuana and unlawful delivery of cocaine counts. (195 Ill. App. 3d 815.) From that judgment, the State appeals. This court granted leave to appeal pursuant to Supreme Court Rule 315. (134 Ill. 2d R. 315.) We affirm the judgment of the appellate court.

On November 6, 1987, at approximately 6:45 p.m., agents of the Du Page County Metropolitan Enforcement Group (DuMEG) executed a search warrant on a residence located at 1 North 535 Swift Road, Lombard, Illinois. Although the home was owned by defendant's brother, Bernard Condon, defendant also resided there.

The complaint on which the search warrant was based was prepared by Barbara Durnil, a DuMEG agent. In that complaint, Agent Durnil set forth her experience as a peace officer and familiarity with drugs and drug dealers. She indicated her information was that Bernard Condon had been arrested on November 7, 1985, for possessing approximately 41.53 grams of cocaine packaged to indicate it was for delivery, and also had in his possession at that time a loaded .22-caliber Baretta semi-automatic pistol. The charges against Bernard Condon for armed violence and unlawful delivery of a controlled substance were still pending at the time of the complaint, and the complaint went on to state that the Condon residence had been under surveillance by DuMEG agents since June of 1987.

The remainder of the information contained in the complaint was told to Agent Durnil by DuMEG Agent

Charles Dvorak as follows. An individual identified as Roger Trenton told Agent Dvorak he had purchased cocaine from the Condon brothers at the 1 North 535 Swift Road address over a four-month period. Trenton said the residence contained two closed circuit television cameras, a police scanner to monitor traffic near the residence, and weapons to protect the cocaine and currency. According to Trenton, Bernard Condon brought the cocaine to the residence and sold it from a second-floor office.

Further, Agent Dvorak told Agent Durnil that he had precipitated a "buy" between Trenton and Timothy Condon at the Swift Road location on June 10, 1987, which proved to be cocaine, and that Trenton had again observed the surveillance cameras and police scanner at the residence.

The complaint further indicated that working undercover, Agent Durnill had arranged with Ben Adams to make cocaine purchases for her from the Condon residence on October 21, 1987, and again on November 5, 1987.

In executing the warrant, approximately 12 DuMEG officers wearing bullet-proof vests entered the Condon residence with the aid of a battering ram. According to defendant, the police did not knock, use the doorbell or announce themselves in any way. The State does not contest that the DuMEG officers did not knock and announce.

The defendant filed a motion to suppress evidence, and at the motion hearing, defendant stated he was in the kitchen and heard two loud bangs just before 12 S.W.A.T. officers forcibly entered the house. The defendant acknowledged the presence of surveillance cameras at both the front and rear entrances of the house with a monitor in the kitchen which could be switched back and forth between the two cameras, as well as a police scan-

ner. Although the cameras were on, defendant said it was too dark to see anything on the monitor because no lights were on outside the house.

At oral argument, the State conceded that two unloaded guns were found in a first-floor bedroom. The remaining 11 guns were found in various rooms on the second floor, including a loaded revolver in defendant's bedroom and a loaded pistol in Bernard Condon's office. Defendant testified that most of the other guns were used for hunting, and included 10 shotguns and 1 rifle.

The only evidence offered by the State at the suppression hearing was the complaint for search warrant. In denying the motion to suppress, the trial court found there were exigent circumstances which justified the failure of the officers to knock and announce prior to entering the home.

The issues before us are whether exigent circumstances existed to warrant the unannounced entry and whether defendant was "otherwise armed" under the armed violence law when weapons were found throughout the house.

The State does not contest the defendant's assertion that the officers did not knock or announce their entry to the defendant and the other occupants of the house. The State argues that the totality of the circumstances which the officers faced here constituted sufficient exigent circumstances to excuse the officers' failure to knock and announce. We affirm the appellate court.

Since Illinois has no statutory requirement that officers knock and announce their authority and purpose prior to entering a dwelling, the propriety of such an entry must be determined by constitutional standards. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 516.) Although the failure of law enforcement officers to knock and announce is not a *per se* constitutional violation, the presence or absence of such an announcement is an impor-

tant consideration in determining whether a subsequent entry to arrest or search is constitutionally reasonable. (*People v. Saechao* (1989), 129 Ill. 2d 522, 531; *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166.) The purpose of the knock-and-announce rule is to notify the person inside of the presence of police and of the impending intrusion, give that person time to respond, avoid violence, and protect privacy as much as possible. (*Ouellette*, 78 Ill. 2d at 518.) Officers may be excused from the knock-and-announce requirement if exigent circumstances exist sufficient to justify the intrusion. (*Ouellette*, 78 Ill. 2d at 516.) Where exigent circumstances exist, the failure of the police to knock and announce their authority and purpose in the execution of a search warrant for narcotics does not violate the fourth amendment right against unreasonable searches and seizures. (*Ouellette*, 78 Ill. 2d at 516.) Exigent circumstances may encompass such considerations as danger to the police officers executing the warrant, or the uselessness of the announcement, or the ease with which the evidence may be destroyed. *Ouellette*, 78 Ill. 2d at 518.

The exigent circumstances that the State points to are the presence of cocaine, the existence of surveillance cameras and a police radio scanner, the presence of weapons in the house, and the fact that the defendant's brother, Bernard Condon, was arrested in 1985 with cocaine and a loaded .22-caliber semi-automatic pistol in his possession. The State argues that if these circumstances are viewed synergistically, they must constitute exigent circumstances. While there is a certain appeal to the State's argument, we cannot agree that just because there are a number of circumstances, not one of which standing alone would create an exigency, the sheer volume of circumstances without something more is sufficient to create exigent circumstances. In the instant case, such a view would serve to defeat the purpose of

the announcement requirement. The State presented no additional testimony at the suppression hearing. Therefore, our analysis of the exigent circumstances must necessarily center around the facts as presented in the search warrant relied on as the basis for the police officers' decision to enter the Condon residence without knock or announcement.

We must necessarily deal with each potential exigent circumstance individually, since the individual circumstances equal the totality. First, the officers were aware that defendant's brother, who owned the house, had been arrested two years earlier in 1985, with cocaine and a pistol in his possession. There is absolutely no indication from the record, however, that Bernard Condon had exhibited any violent or threatening behavior of any kind at the time of that arrest, and the charges brought in 1985 were still pending at the time of this incident. Only if the officers feared that Bernard Condon would use a gun against them were they justified in dispensing with the knock-and-announce requirement. (*Ouelette*, 78 Ill. 2d at 520, citing *People v. Dumas* (1973), 9 Cal. 3d 871, 878, 512 P.2d 1208, 1213, 109 Cal. Rptr. 304, 309; *People v. Hardin* (1989), 179 Ill. App. 3d 1072, 1076-77.) The warrant does not evidence such a fear.

The appellate court distinguished *Hardin* where defendant, who had been arrested at his residence some months earlier, was then found to have a handgun and told police they were lucky he did not get to his gun. (*Hardin*, 179 Ill. App. 3d at 1074.) We agree that the lack of knock and announcement was justified in *Hardin* because the police there could reasonably have assumed that the defendant intended to use the weapon against them because he threatened them at the earlier arrest. Here, however, there is nothing in the record to suggest that Bernard Condon had ever been violent or used the gun or even threatened to use it.

The State asks this court to rely on the reasoning of *People v. Trask* (1988), 167 Ill. App. 3d 694, as cited in *Hardin*, but we disagree with the State's interpretation of *Trask*. The *Trask* court said, "The police should not have to be certain that they will be shot at if they wait very long before entering; they just have to have a reasonable apprehension of danger." (*Trask*, 167 Ill. App. 3d at 705.) The key words here are "wait very long." The police here did not knock or wait at all—they just barged in. Further, unlike the threat in *Trask*, there is nothing in the instant case to tell us the police had a "reasonable apprehension of danger."

The facts of the warrant support the officers' belief that narcotics were being sold from the Swift Road residence. The informant, Roger Trenton, indicated he had purchased cocaine at the residence. Ben Adams had made cocaine purchases for Agent Durnil from the Condon residence. The appellate court majority found, and we agree, that the presence of narcotics alone is not an exigent circumstance, but rather the police must have particular reasons to reasonably believe in a particular case that evidence will be destroyed. (*Ouellette*, 78 Ill. 2d at 520; *People v. Clark* (1986), 144 Ill. App. 3d 7, 11.) There is no contention by the State that the drugs were situated such that they could be easily destroyed. The mere fact that a search involves the discovery of drugs does not constitute an exigent circumstance.

The informant, Trenton, told Agent Dvorak that there were weapons in the house to protect the cocaine and currency. The warrant gives no other details concerning the weapons—type, quantity, location—or whether they had ever been used by anyone in the house in a violent manner. The statement "protect the cocaine and currency" is hardly conclusive that the weapons were to be used against the police. The appellate court majority properly relied upon this court's ruling in *Ouel-*

*lette* that the existence of a weapon should excuse the knock-and-announce rule only where the officers reasonably believe the weapon will be used against them if they proceed with ordinary announcements. (*Ouellette*, 78 Ill. 2d at 520.) The State has provided no evidence which would support such a belief on the part of the DuMEG officers.

Finally, the warrant adds the surveillance cameras and the police scanner to the equation. The State argues that the "advance warning system" made any announcement "useless." We disagree. It was the unrebutted testimony of the defendant that the outside lights were not on and therefore nothing could be seen on the monitor. The police should have known that the cameras were ineffective without lighting. But, even if the occupants of the house had been aware of the police approaching via the surveillance cameras or the police scanner, it does not necessarily follow that they would have "gone for their guns" since, we reiterate, there is nothing in the warrant or the record to indicate that these were exceptionally dangerous people with a proclivity for violence. Again, there is nothing to indicate that the police officers reasonably believed that a weapon would be used against them if they did announce. (*Ouellette*, 78 Ill. 2d at 520.) Furthermore, the same holds true for the destruction of evidence. Nothing in the warrant or the record indicates that the defendant or the other occupants of the house had devised any procedure for quick destruction of the evidence. We agree with the majority of the appellate court that in this instance, the surveillance equipment and scanner did not constitute an exigent circumstance which relieved the police of their knock-and-announce responsibility.

The State laments the fact that the appellate court majority gave "short shrift" to the totality of the circumstances analysis. The State urges that the combina-

tion of drugs, plus weapons, plus surveillance equipment equals exigent circumstances even though not one of those circumstances as they exist in the instant case, standing alone, would constitute an exigent circumstance. We disagree because such an analysis would serve to defeat the purpose of the knock-and-announce rule—to notify the person inside of the presence of police and of the impending intrusion, give that person time to respond, avoid violence, and protect privacy as much as possible. (*Ouellette*, 78 Ill. 2d at 518.) In the case at bar, there was no notice to the persons inside the house of the impending intrusion, no time to respond, and no privacy protected. Had the defendant been in a different position than he was found, sitting down to have his dinner, he may have been sufficiently upset to have reacted violently to such a startling entrance. Had the defendant or any of the other occupants of the house had a gun at hand, such an unexpected entrance may well have precipitated a violent encounter since the occupants of the house could have thought the intruders were thieves out to steal their drugs and currency. On the other hand, had the police knocked and announced their purpose, the defendant and his friends may well have thought long and hard about entering into a gun battle with the police had they been in a position to do so. Thankfully, they were not in such a position. Again, if the police had information that there were persons involved who were associated with violent or assaultive behavior, that would have presented a different scenario than the one we are given by the search warrant.

Indeed, the need for compliance with the knock-and-announce rule would seem to be even greater where the police know there are weapons present, but the persons involved are not known to have a propensity to use weapons. Any citizen in the privacy of his or

her home might resort to the use of violence if threatened by a completely unexpected and unannounced entry into the home, let alone someone who is involved in the world of drugs. Again, we reiterate that the purpose of the knock-and-announce rule is to prevent what could turn out to be deadly encounters between police and citizens. Therefore, we decline to adopt a totality of the circumstances rule which, in this case, would serve to defeat that purpose. We hold that sufficient exigent circumstances did not exist in this case to excuse the DuMEG agents from knocking at the door of defendant's residence and announcing their purpose before entering.

Accordingly, we affirm the appellate court majority's finding that the trial court's denial of the motion to suppress was manifestly erroneous under the facts of this case. (195 Ill. App. 3d at 823.) Since the evidence resulting from the illegal search was improperly admitted, the appellate court properly reversed defendant's convictions on the possession of marijuana, possession of cocaine, and unlawful delivery of cocaine counts and remanded for a new trial. 195 Ill. App. 3d at 824-25.

We are not deaf to the argument of the appellate court dissent that police officers should not be forced to face unnecessary danger when attempting to execute warrants. (195 Ill. App. 3d at 827 (Geiger, J., dissenting).) We agree, but this court must be careful to strike the proper balance between individual rights and the police power of the State. The knock-and-announce rule with its exigent circumstances exception is intended to do just that as well as to protect the police from unnecessary danger. We therefore refuse the State's invitation to dispense with the knock-and-announce rule in assessing the reasonableness of the en-

try of law enforcement authorities to execute a valid search or arrest warrant.

The final issue for our consideration is whether the defendant was "otherwise armed" under the armed violence law when weapons were found throughout the house. We hold that he was not "otherwise armed."

The armed violence statute states, "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law" (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). The statute defines the phrase "armed with a dangerous weapon": "A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon" (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1(a)). The State urges us to find that the defendant was in "constructive possession" of the weapons in the house such that he was otherwise armed for purposes of the armed violence statute. We decline to make such a finding.

The armed violence statute (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1 et seq.) was enacted in 1967 " 'to respond emphatically to the growing incidence of violent crime.' " (People v. Alejos (1983), 97 Ill. 2d 502, 507-08, quoting People v. Graham (1975), 25 Ill. App. 3d 853, 858.) The intended purpose of the armed violence statute is to deter felons from using dangerous weapons so as to avoid the deadly consequences which might result if the felony victim resists. (Alejos, 97 Ill. 2d at 508.) That deterrent purpose is not served under the circumstances of this case.

A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. (People v. Eure (1986), 140 Ill. App. 3d 387, 393.) Without a weapon at hand, the felon is

not faced with such a deadly decision. Hence, we have the deterrent purpose of the armed violence statute. Thus, for this purpose to be served, it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon.

In the instant case, there were a number of guns, including two loaded pistols, discovered at various locations throughout the house. The defendant was found in the kitchen where there were no guns. Most of the guns were located on the second floor of the house. Only an unloaded shotgun and unloaded rifle were found in a first-floor bedroom. It was impossible for the defendant to use the guns as they were situated because they were too far removed from the defendant. The danger that the defendant would be forced to make an instantaneous decision to use the guns was nonexistent because he had no "immediate access to" or "timely control over" the guns.

The underlying felonies in this case were delivery of and possession of more than 15 grams of a controlled substance, cocaine, with the intent to deliver. There is no evidence that the defendant used or displayed the guns during the delivery of cocaine. The State contends that because the possession of cocaine was an ongoing felony, and the guns were in the house with the cocaine, the armed violence statute should apply. Such a finding reaches too far. Were we to find the presence of guns in the house with the cocaine enough to violate the armed violence statute, such a finding would be contrary to the purpose for which the statute was enacted. Rather, we find that defendant would have had to carry a weapon on his person or alternatively to have had "immediate access to" or "timely control over" a weapon when the police entered to have been "otherwise armed" for purposes of the statute.

The State refers to *People v. Haron* (1981), 85 Ill. 2d 261, where this court stated that "the mere physical presence of a weapon while a crime is being committed is thought to be a sufficient threat to warrant proscription." (*Haron*, 85 Ill. 2d at 268.) The context in which that particular statement was made is instructive in this case. In setting forth comparable weapons statutes of other States which require no connection between the predicate offense and the presence of a weapon, we pointed out the two legislative approaches to the problem of armed violence. In one approach, the weapon must be used, while the other approach "prohibits and punishes the mere *possession or carrying* of a weapon during the commission of a crime." (Emphasis added.) (*Haron*, 85 Ill. 2d at 268.) In the present case, defendant did not possess or carry a weapon during the commission of the crime.

In support of its constructive possession theory, the State cites three appellate court decisions. In *People v. Bond* (1989), 178 Ill. App. 3d 1020, the defendant was convicted of armed violence, the underlying felony for which was unlawful possession of a controlled substance, cocaine. The *Bond* court found that although "the gun was not physically in defendant's hands or in actual contact with his 'person,' it was *immediately accessible*." (Emphasis added.) (*Bond*, 178 Ill. App. 3d at 1023.) The gun was, in fact, underneath the cushion of the sofa upon which defendant was seated. "The mere *physical existence* of a weapon is not within the meaning of the [armed violence] statute." (Emphasis added.) (*Bond*, 178 Ill. App. 3d at 1023.) We agree.

Similarly, in *People v. King* (1987), 155 Ill. App. 3d 363, the appellate court disallowed equating the definition of presence of the weapon with the mere physical existence of the weapon. "Taken to its logical conclusion, a defendant could be convicted of armed violence,

in an otherwise factually similar situation as is present in this case [gun lying on table in bedroom], simply because a weapon was located anywhere in the home. This is a result not intended by the legislature." (*King*, 155 Ill. App. 3d at 368-69.) We agree.

In *People v. Zambetta* (1985), 132 Ill. App. 3d 740, the court found that the defendant constructively possessed a loaded revolver which was found in the glove compartment of the car owned and being driven by defendant during an unlawful delivery of a controlled substance, cocaine. "Where the defendant does not have personal physical possession, yet has the intent and capability to maintain control and possession, and the defendant knows of the presence of the weapon, the defendant can be said to have constructive possession." (*Zambetta*, 132 Ill. App. 3d at 750, citing *People v. Turnbeaugh* (1983), 116 Ill. App. 3d 199, 205; *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 1023-24.) The defendant in *Zambetta* was in the car an arm's length from the gun. We suggest that defendant Condon did not have the capability to maintain control and possession of guns that were not even in the same room with him. Thus, we also find the State's theory of constructive possession to be of doubtful persuasion under the facts of the instant case. We therefore also affirm that part of the appellate court judgment that reversed the defendant's armed violence conviction.

The judgment of the appellate court is affirmed.

*Affirmed.*

CHIEF JUSTICE MILLER, dissenting:

I do not agree with either of the majority's holdings in this case: that the trial court erred in denying the defendant's suppression motion, and that the evidence will not sustain the defendant's conviction for armed violence. Accordingly, I dissent.

With regard to the suppression issue, the majority concludes that the circumstances in this case did not excuse the failure of the law enforcement officers here to comply with the knock-and-announce rule. The court thus holds that the officers executing the search warrant should have announced their authority and purpose before they entered the subject premises. On this basis, then, the majority concludes that the trial judge erred in denying the defendant's motion to suppress evidence.

The knock-and-announce rule is intended to promote privacy and to safeguard both residents and officers during the execution of arrest and search warrants. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 518; *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166.) Compliance with the knock-and-announce rule is an important consideration in determining the reasonableness of police entry into a private dwelling to make an arrest or to conduct a search. (*People v. Saechao* (1989), 129 Ill. 2d 522, 531; *Wolgemuth*, 69 Ill. 2d at 166.) In appropriate circumstances, however, compliance with the rule may be excused. (*Ouellette*, 78 Ill. 2d at 516; *People v. Conner* (1979), 78 Ill. 2d 525, 531.) Relevant to this determination are, among other things, the danger posed to the officers executing the warrant, the relative usefulness or uselessness of an announcement, and the ease with which the sought-after evidence might be destroyed. *Ouellette*, 78 Ill. 2d at 518.

As a preliminary matter, I question the majority's refusal to examine the circumstances as a whole in assessing the propriety of the officers' actions. The touchstone of the inquiry is the reasonableness of the challenged conduct, and that assessment cannot be reliably made if each fact or circumstance is viewed in isolation. It is not necessary that any one circumstance alone supply the necessary exigency that will excuse an

official failure to comply with the knock-and-announce rule; rather, the determination should be based on a consideration of all the circumstances bearing on the reasonableness of the police entry. See *Conner*, 78 Ill. 2d at 533 ("Based on a consideration of all of these facts," the court found exigent circumstances sufficient to excuse compliance with knock-and-announce rule); *People v. Fonville* (1987), 158 Ill. App. 3d 676, 684.

In the present case, the officers executing the search warrant were aware of a number of special circumstances that justified their decision to enter the premises without first announcing their authority and purpose to the persons inside. Here, the officers knew that closed-circuit television cameras were trained on the front and rear entrances of the structure, that a police scanner kept the occupants informed of police radio transmissions in the vicinity, and that numerous weapons were located inside the structure. The police also knew that the building was owned by the defendant's brother, who was facing felony charges involving the possession of a loaded handgun and the possession of cocaine.

In view of these circumstances, I would conclude that the officers acted reasonably in entering the building to execute the search warrant without complying with the knock-and-announce rule. The occupants' use of the surveillance cameras and police scanner certainly reduced, if it did not eliminate, the utility of an announcement of the officers' presence. The elaborate and unusual security measures would have provided the building occupants with the opportunity to destroy the contraband and to attempt to resist the police entry. The officers were also aware that a number of guns were kept on the premises, and that those weapons were used to protect the drugs and money involved in the illegal operations. The reasonableness of the offi-

cers' conduct must be assessed in the light of what the officers knew at the time of the entry, and therefore it is no answer here to assert, as the majority does, that the surveillance cameras were not functioning during the evening of the search and, moreover, that the officers should have realized that (148 Ill. 2d at 106). On the present record, I would conclude that exigent circumstances excused the officers' failure to comply with the knock-and-announce rule.

I also disagree with the majority's holding that the evidence will not sustain the defendant's conviction for armed violence. As the record reveals, more than a dozen firearms were found on the premises. In my view, the presence of these weapons, in various places throughout the structure, satisfied the statutory requirement that the accused be armed. (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2.) Applying the majority's own construction of the statutory language, I would conclude that the defendant, on either instance charged, had "immediate access to" or "timely control over" at least one of the many weapons located throughout the premises.

For the reasons I have stated, I dissent. I would remand the cause to the appellate court for consideration of other issues previously raised but not decided in that court.