May 11, 1998

No.  2--96-0864

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of Kane County.

)

Plaintiff-Appellee, ) 

)

) No. 94--CF--1890

)

VERA AARON, ) Honorable

) Philip L. DiMarzio,

Defendant-Appellant. ) Judge, Presiding.

JUSTICE RATHJE delivered the opinion of the court:

The defendant, Vera Aaron, was charged by indictment with armed violence (720 ILCS 5/33A--2 (West 1994)), unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1994)), and criminal fortification of a residence (720 ILCS 5/19--5 (West 1994)).  On April 19, 1995, based upon a psychologist’s evaluation, the State and the defendant entered into an agreed order in which  the State stipulated that the defendant was unfit to stand trial and that there was a substantial probability that she would not be rendered fit to stand trial within one year (see 725 ILCS 5/104--16 (West 1994)).  The State moved for a discharge hearing.  See 725 ILCS 5/104--23, 25 (West 1994).  

A discharge hearing was held on June 5, 1996.  The following evidence was adduced at that hearing.

Louis Puscas, an officer with the Aurora police department, testified that he executed a search warrant at a single-family two- story residence located at 229 Schiller Avenue in Aurora.  There were 11 other officers involved in the execution of the search warrant.  There were two outdoor entrances to the residence, the front door and the side door.  Officer Puscas and his team attempted to open the side door.  When they were unable to do so, they entered using a “battering ram.”  A 2- by 6-inch plank of wood had been nailed across the door’s frame from the inside.  

On cross-examination, Officer Puscas testified that the search warrant in this case was a “no-knock” warrant, which does not give the individual inside the residence an opportunity to answer the door first.  Officer Puscas never checked the door to see if there were other means of locking the door, nor did he know if the windows of the residence were locked.  The officer was aware that the residence was in an area where property offenses had occurred.

Robert Reichardt, an officer with the Aurora police department, testified that he was in charge of the execution of the search warrant at the Schiller Avenue residence.  He entered the residence through the front door after the door was smashed in.  A 2- by 4-inch block of wood had been nailed to the floor and braced up against the door.  

Officer Reichardt spoke to the defendant, who had been brought downstairs from the upstairs southwest bedroom.   According to the officer, when he asked the defendant if she owned or rented the residence, she responded that she rented it and that she did not sell cocaine, “they only use it.”  

Officer Reichardt further testified that a search of the upstairs of the residence revealed three weapons in a small room, designated the southeast room.  Two of the weapons were pistols; both were loaded and were located in a video cassette holder.  In the closet area in that room was a shotgun with one shell in it.  Officer Reichardt estimated that the southeast room was 30 to 40 feet from the southwest bedroom.  

Officer Reichardt further testified that two homemade smoking devices were found in a trash can downstairs and one such device in an upstairs cabinet.  Three white rocky substances were found in a candy dish in the upstairs hallway.  A razor and a white substance were found on top of a sheet of glass on a dresser in the southeast room.  

Officer Reichardt further testified that a man later identified as Clarence Boseman was discovered in the residence’s attic area, which he had accessed from the southeast room.  A second man, unidentified, was discovered in the living room of the residence.  

On cross-examination, Officer Reichardt testified that the substance found in the candy dish weighed less than .60 grams and would fit on a fingertip.  The substance on the dresser weighed .34 grams and would also fit on a fingertip.  The officer admitted that he had to look closely before he could detect the cocaine.  He also acknowledged that the area in which the residence was located was known for the occurrences of property offenses.  He did not check to see if the doors to the residence could have been locked in any other way.

Officer Reichardt further testified that he did not know if the other officers who escorted the defendant downstairs made any statements to her.  He agreed that there was no evidence that the defendant was any closer than 30 to 40 feet from the nearest weapon.  He never questioned the defendant as to the guns or drugs that were found in the residence.  

William Hull, an officer with the Aurora police department, testified that he took part in the execution of the search warrant at the Schiller Avenue residence and was in charge of retrieving the evidence found there.  According to Officer Hull, the southwest bedroom was no more than 10 feet from the farthest opening to the southeast room.  

Dr. Frank Scommegna, a clinical psychologist, testified that he performed a psychological evaluation of the defendant’s fitness to stand trial in March 1995.  The defendant suffers from schizophrenia and is in the borderline range of intelligence, which is one step away from the mentally retarded range.  The results of certain of the tests showed that the defendant is likely to misperceive cues in her environment and lacks the capability for critically thinking and assessing her environment.  

In response to a hypothetical question in which he was asked to assume the circumstances of the execution of the search warrant in this case, Dr. Scommegna opined that the defendant would not have accurately perceived what was going on in her home.  Given that she could not perceive the situation accurately, she could not have responded with the statement that was attributed to her by the police that they only smoked or used the cocaine in the house.  Dr. Scommegna further opined that she would not be able to perceive that other people kept drugs or used drugs and weapons in her home, even if the items were out in the open.  The defendant’s performances on the tests demonstrated that, even when the situation was relatively clear and obvious that something was wrong or out of place, the defendant did not perceive that fact.  Dr. Scommegna did not detect any malingering with the defendant.  

The defendant testified that at the time of the execution of the search warrant she was in the upstairs southwest bedroom of the residence watching television.  She heard a noise at the front door and then heard the sounds of someone breaking into the residence.  When she moved into the residence, the landlord had placed a 2-by-4 behind the front door because the lock was broken.  The back (side) door also had a board behind it because the deadbolt lock did not work because the wood was damaged.  The boards were there when the defendant rented the residence.  The boards were necessary because the defendant was afraid of people coming into the residence. 

The defendant further testified the police officers showed her some papers and then began looking in the closet in the southeast room.  The defendant was shown a picture of the closet in which the shotgun appeared, but the defendant refused to acknowledge that she saw the shotgun in the picture.  She eventually acknowledged that it looked like a gun the prosecutor had brought into court.  She denied seeing the gun before she saw it in court.  She stated that she hardly ever went into that closet in the residence.  An officer asked if she lived there, to which she responded yes.  She did not say anything else after that.  She had never seen the cocaine found in her house before.  

The defendant further testified that she only went as far as the second or third grade in school.  Clarence Boseman, a friend of hers for 18 years, had been living with her.  He never discussed drugs or guns with her; he knew she was afraid of guns.  Clarence would have friends over, but she did not know what they were doing.

On cross-examination, the defendant testified that if she went out she locked the door from the outside.  She only put the board up when she went to bed.  Since she does not do drugs, she was certain she never told the officers that she only used but did not sell drugs.  She stored her clothes in the closet in the southeast room; the only time she went in there was to get her clothes that needed washing.  She never saw Clarence bring any guns home or place them in the locked cabinet in the southeast room.  

On redirect examination, the defendant testified that she did not know who put the boards up the night the search warrant was executed.  She thought Clarence had a gun card prior to his arrest in connection with these charges.  The defendant never saw a shotgun in the closet.  

Clarence Boseman testified that he had pleaded guilty to drug possession and house fortification in connection with this case against the defendant.  

According to Mr. Boseman, the southwest bedroom where the defendant was found was between six and eight feet from the southeast room.  The defendant kept dirty clothes in the closet there.  Mr. Boseman kept an antique shotgun in the closet covered up with other things.  He never told the defendant the gun was there because he knew she was afraid of guns.  He had two pistols that he kept in a locked cabinet in the closet area of the southeast room.  He had the guns for protection, but he did not tell the defendant about them.  The cocaine in the candy dish was his; he had purchased it off the street a few hours before the police executed the search warrant.  He never told the defendant that he had brought cocaine into the house.  The smoking devices also belonged to  him.  When the police entered the residence, he hid in a crawl space in the southeast room.  After the police found him, he was brought downstairs.  

Mr. Boseman further testified that he was present when the landlord put the board on the front door because there was no lock on the door.  On a day-to-day basis, Mr. Boseman would put the board up, but it was up most of the time because they used the side door more frequently.  Mr. Boseman put the board up on the side door because his nephew kicked the door open and, as a result, there was no way to lock the door.  The damaged door was reported to the police.  There was a “slam” lock, but nothing that would hold.  

Officer Reichardt, recalled by the State, testified that the cabinet in which the guns were found was closed but not locked.  However, it was possible that the key was in the lock.  

In reaching its decision, the trial court stated that it found the testimony of Officers Puscas, Reichardt, and Hull to be credible.  It found that Clarence Boseman was not a credible witness and that the defendant’s testimony was highly incredible, particularly in light of her attempt to exculpate herself by refusing to see the shotgun in the picture depicting the closet area in the southeast room.  Even taking Dr. Scommegna’s testimony into account, the trial court concluded that it was clear from the evidence that the defendant understood that cocaine was illegal and that she constructively possessed it, especially by her statement to the police that they only used cocaine as opposed to selling it.   The trial court further found that the defendant had kept the residence in a fortified condition based upon the presence of the boards, which, although they kept out unwanted intruders, also kept out the police from a place where drugs were kept.  

Finally, the trial court determined that the defendant was aware of the shotgun in the closet since she kept her clothes and other things in that closet and, further, that the gun was very close to the room where she was discovered by the police.  Further, although the defendant and Mr. Boseman testified that the cabinet where the pistols were found was locked, the police found it unlocked.  The trial court, therefore, did not acquit the defendant of the charges.  See 725 ILCS 5/104--25 (West 1994).  This appeal followed.

A circuit court’s ruling on a motion to suppress evidence is generally subject to reversal only if manifestly erroneous.  
People v. Krueger
, 175 Ill. 2d 60, 64 (1996).  In addition, a reviewing court will defer to the trial court’s determination of the credibility of the witnesses and its resolution of the conflicts in the testimony.  
People v. Riddle
, 258 Ill. App. 3d 253, 257 (1994).  In the present case, no testimony was taken and the parties submitted only written memoranda in support of their respective positions.  For the purposes of the motion to quash the search warrant, the facts were uncontroverted.   Therefore, a question of law is presented, and we will conduct a 
de
 
novo
 review of this issue.  See 
Krueger
, 175 Ill. 2d at 64.  

The defendant contends, first, that her motion to quash the search warrant in this case should have been granted because subsection (b)(4) of the no-knock statute is unconstitutional (725 ILCS 5/108--8(b)(4) (West 1994)) and because no exigent circumstances existed that would warrant a no-knock intrusion.  

Officer Reichardt’s affidavit in support of the no-knock search warrant in this case stated that on two occasions a confidential informant had purchased cocaine at the Schiller Avenue residence from an individual identified as Clarence Boseman.  Paragraph 6 of the affidavit provided as follows:

“6.  Affiant was advised by the confidential source that on both dates that crack cocaine was purchased from the residence at located at 229 Schiller Avenue Aurora, Kane County, Illinois both the front door and the side door on the north side of the residence had wooden barricades on the doors to prevent entry into the residence.  Therefore based on the above Affiant is requesting the person executing the warrant may make entry without first knocking and announcing his office.”

     Following the submission of memoranda by the parties, the trial court found that exigent circumstances existed for the issuance of the no-knock search warrant and that subsection (b)(4) did not violate the defendant’s constitutional rights.

The fourth and fourteenth amendments to the United States Constitution (U.S. Const. Amend. IV, XIV), as well as our Illinois Constitution (Ill. Const. 1970, art. I, §6) prohibit the government from violating a person’s right not to be subject to unreasonable searches and seizures.  See 
Krueger
, 175 Ill. 2d at 65.  The underlying command of the fourth amendment is that searches and seizures by governmental officials be reasonable.  
Krueger
, 175 Ill. 2d at 65.  Part of the reasonableness requirement under the fourth amendment is whether the police complied with the knock-and-announce rule.  
Krueger
, 175 Ill. 2d at 65-66; see 
Wilson v. Arkansas
, 514 U.S. 927, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995).

Since Illinois has no statutory requirement that officers knock and announce their authority prior to entering a dwelling, the propriety of a no-knock entry is to be determined by constitutional standards.  
People v. Condon
, 148 Ill. 2d 96, 102 (1992).  Although the failure of the law enforcement officers to knock and announce is not a 
per
 
se
 constitutional violation, the presence or absence of such an announcement is an important consideration in determining whether a subsequent entry to arrest or search is constitutionally reasonable.  
Condon
, 148 Ill. 2d at 102-03.  The supreme court described the purpose behind the knock-and-announce rule as follows:

“The purpose of the knock-and-announce rule is to notify the person inside of the presence of police and of the impending intrusion, give that person time to respond, avoid violence, and protect privacy as much as possible. [Citation.] Officers may be excused from the knock-and-announce requirement if exigent circumstances exist sufficient to justify the intrusion.  [Citation.]  Where exigent circumstances exist, the failure of the police to knock and announce their authority and purpose in execution of a search warrant for narcotics does not violate the fourth amendment right against unreasonable searches and seizures. [Citation.] Exigent circumstances may encompass such considerations as danger to the police officers executing  the warrant, or the uselessness of the announcement, or the ease with which the evidence may be destroyed.”  
Condon
, 148 Ill. 2d at 103.  

     In 1992, the legislature amended section 108--8 of the Code of Criminal Procedure of 1963 to provide certain types of exigent circumstances the existence of which would authorize the issuance of a no-knock search warrant.  725 ILCS 5/108--8(b) (West 1992).  Section 108--8(b)  provides in pertinent part as follows:

“(b) Upon a finding by the judge issuing the warrant that any of the following exigent circumstances exist[s], the judge may order the person executing the warrant [to] make entry without first knocking and announcing his office:

(1) the presence of firearms or explosives in the building in an area where they are accessible to any occupant;

(2) the prior possession of firearms by an occupant of the building within a reasonable period of time;

(3) the presence of surveillance equipment, such as video cameras, or alarm systems, inside or outside of the building;

(4) the presence of steel doors, wooden planking, crossbars, dogs, or other similar means of preventing or impeding entry into the building.”  725 ILCS 108--8 (b) (West 1994).

In 
People v. Krueger
,  our supreme court held that subsection (b)(2) of the above statute was unconstitutional.  After reviewing the history of the knock-and-announce requirement, the court rejected the State’s argument that subsection (b)(2) is constitutional because it recognizes a legitimate exigent circumstance.  The court noted that an exigent circumstance does not arise from the mere presence of firearms in a building to be searched; rather, the officers must have a reasonable belief that the weapons would be used against them if they were to knock and announce.  
Krueger
, 175 Ill. 2d at 68; see 
Condon
, 148 Ill. 2d 96.  The court concluded that a no-knock entry based solely on the occupant’s prior possession of firearms violates the constitutional requirements of reasonableness and that, therefore, subsection (b)(2) was unconstitutional.  The court also rejected the State’s further argument that, because it is a neutral and detached magistrate who determines whether exigent circumstances exist in any given case,
 
Condon
 is distinguishable.   However, the court pointed out that the statute defines the exigent circumstance and authorizes a no-knock entry solely on this so-called exigent circumstance, which the court had found to be unreasonable.  
Krueger
, 175 Ill. 2d at 69-70.

We believe the 
Krueger
 rationale applies in this case as well.  The focus in the present case is subsection (b)(4) where the exigent circumstance is the presence of devices used to impede the entry into the building.  We note, with interest, that the State does not discuss the decision in 
Krueger
 or its implications in its argument that subsection (b)(4) is constitutional.

We find reasonableness to be lacking from subsection (b)(4).  That subsection requires only that devices impeding entry into the building be present.  The statute does not require that the purpose of the devices is to impede the lawful entry into the building be present or that the devices are there specifically to impede the police from entering the building to conduct a lawful search.  As the statute reads now, the use of a metal or wooden bar to secure a sliding glass door or the presence of a pack of poodles would be sufficient to authorize the issuance of a no-knock search warrant.  The statute does not take into consideration that law- abiding persons, in an effort to protect their property, are often forced to resort to utilizing the devices in subsection (b)(4) in order to protect their property against unwanted intruders; such devices are not always intended to impede the entry of the police.  
See 
United States v. Dupras
, 980 F. Supp. 344, 348 (D. Mont. 1997) (a “fortification” consisting of a deadbolt and a chair or something behind the door is not beyond that contemplated by the average citizen and does not justify smashing down an entryway with a steel battering ram).  But see  
United States v. Stowe
, 100 F. 3d 494, 499 (7
th
 Cir. 1996) (no-knock entry justified where informant had observed a gun in the apartment, the apartment had steel doors, and the defendant was a convicted felon operating under an alias); 
United States v. Johnson
, 643 F. Supp. 1465, 1471 (D. Or. 1986) (no-knock entry justified where the apartment was protected by a heavy wood and metal door that opened out, was difficult to open, and was so heavily fortified that an officer lost his balance and fell down a staircase trying to pry open the door). 

In the present case, the only “exigent circumstance” cited was the presence of wooden barricades blocking the doors to the residence.  The affidavit did not state that the informant had difficulty gaining access to the residence because of these barricades, nor did the affidavit set forth that the informant stated  that the barricades were in place to prevent a raid by the police.  There is nothing in the affidavit that suggests that the purpose of the barricades was to allow the occupants enough time to destroy evidence.   See 
Riddle
, 258 Ill. App. 3d at 259 (the warrant or the record must show that the occupants of the premises had devised a means for the quick destruction of evidence; otherwise, the mere presence of drugs would not provide exigent circumstances).   In fact, while the affidavit in this case refers to two drug buys in the residence by the confidential informant, there is no reference in the affidavit as to the amount of drugs purchased or that a large quantity of drugs was on the premises.  Further, there was no statement in the affidavit that Clarence Boseman was dangerous or expected to be armed.  

Finally, the quantity of drugs recovered in this case amounts to two fingertips’ worth.  The State makes the ingenious argument that this indicates the defendant and Boseman had sufficient time to dispose of the drugs before the police entered, thus justifying the no-knock warrant.  The search of the residence did not reveal any evidence that any drugs had been disposed of prior to the entry of the police.  There was nothing in the affidavit indicating that the drugs in the residence were situated such that they could easily be destroyed.  In fact, the affidavit did not indicate that the informant told the police that drugs were stored in the residence, only that the affiant believed that a search of the residence would reveal drugs.  Moreover, the defendant was found in her bedroom watching television, and Boseman was found in a crawl space.  Given the swift entry of the police, it is hardly likely that either of them would have had the time to dispose of the drugs and resume the locations the police found them in.  

In this case, the no-knock warrant was issued solely on the basis of barricades blocking the doors.  The statute defines the presence of barricades as an exigent circumstance without any consideration as to whether the existence of the barricades posed a danger to the police, would provide an opportunity to dispose of evidence, or whether the customary knock and announce would be futile.  See 
Condon
, 148 Ill. 2d at 105.  To allow no-knock entries based solely upon the existence of devices utilized by the public to keep themselves and their property secure violates the constitutional requirement of reasonableness.  We hold therefore that subsection (b)(4) is unconstitutional.  See 
Krueger
, 175 Ill. 2d at 69.  We also agree with the defendant that based upon the above facts there were no exigent circumstances that justified the entry of the police officers without knocking and announcing their authority.  

The State argues that in the event this court determines that subsection (b)(4) is unconstitutional the evidence in this case is still admissible against the defendant based upon the good-faith exception to the exclusionary rule found in 
Illinois v. Krull
, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987).  The State acknowledges that in 
Krueger
 our supreme court declined to follow 
Krull
 but argues that the evidence seized in the search in this case should be admissible under the exception to the exclusionary rule established in 
United States v. Leon
, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984).  

In 
 
United States v. Leon
, our United States Supreme Court held that the fourth amendment exclusionary rule will not bar the use of evidence obtained by a police officer who reasonably relied in good faith on a search warrant issued by a neutral and detached magistrate but ultimately found to be unsupported by probable cause.  
Leon
, 468 U.S. 897, 82  L. Ed. 2d  677, 104 S. Ct. 3405; 
Krueger
, 175 Ill. 2d at 70-71.  The Supreme Court’s decision in 
Krull
 extended the good-faith exception to the use of evidence seized by a police officer who in good faith relied on a statute that authorized a warrantless administrative search but was later held to be unconstitutional.  (
Krueger
, 175 Ill. 2d at 71; 
Krull
, 480 U.S. at 347-49, 94 L. Ed. 2d at 373-75, 107 S. Ct. at 1165-67
.  A major underpinning of the majority’s decision in 
Krull
 was its determination that legislators are not inclined to act in contravention of fourth amendment values; as a result, the majority found no evidence that the exclusionary rule is necessary to deter legislators from enacting unconstitutional statutes.  Krueger, 175 Ill. 2d at 71; 
Krull
, 480 U.S. at 349-52, 94 L. Ed. 2d at 375-77, 107 S. Ct. at 1167-69. 

In 
Krueger
, our supreme court held that the exclusionary rule arising out of our state constitution (Ill. Const. 1970, art. I. §6) continues to afford the protection abrogated by 
Krull
.  
Krueger
, 175 Ill. 2d at 73-74.  However, the court went on to note that its decision did not impact the 
Leon
 good-faith exception.  
Krueger
, 175 Ill. 2d at 76.   While this would appear to give credence to the State’s argument in this case, the court cited Justice O’Connor’s dissent in 
Krull
, which distinguished 
Leon
  from 
Krull
.  After noting that there is a “ 'powerful historical basis for the exclusion of evidence gathered pursuant to a search authorized by an unconstitutional statute’ ”(
Krueger
, 175 Ill. 2d at 72, quoting 
Krull
, 480 U.S. at 362, 94 L. Ed. 2d at 383, 107 S. Ct. at 1173 (O’Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.)), Justice O’Connor drew a clear distinction between the legislator and the judicial officer who mistakenly issued the warrant in 
Leon
, stating as follows:

“ 'The judicial role is particularized, fact-specific and non-political.  Judicial authorization of a particular search does not threaten the liberty of everyone, but rather authorizes a single search under particular circumstances.  The legislative act, on the other hand, sweeps broadly, authorizing whole classes of searches, without any particularized showing.  A judicial officer’s unreasonable authorization of a search affects one person at a time; a legislature’s unreasonable authorization of searches may affect thousands or millions and will almost always affect more than one.  Certainly the latter poses a greater threat to liberty.’ ”  
Krueger
, 175 Ill. 2d at 72-73, quoting 
Krull
, 480 U.S. at 365, 94 L. Ed. 2d at 385, 107 S. Ct. at 1175 (O’Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.).

The “'exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges or magistrates.’ ”  
People v. Turnage
, 162 Ill. 2d 299, 307 (1994) quoting 
Leon
, 468 U.S. at 916, 82 L. Ed. 2d at 694, 104 S. Ct. at 3417.  Thus, the State argues that excluding the evidence in this case would do nothing to deter future police conduct.  The State, however, misses the import of Justice O’Connor’s words, cited with approval in 
Krueger
, to the effect that legislators also need to be deterred from enacting unreasonable authorizations for searches.  Moreover, the lack of a remedy leaves no incentive for the aggrieved defendant to challenge the statute as unconstitutional.  
Kreuger
, 175 Ill. 2d at 73.  

We therefore reject the State’s argument that the evidence in this case is admissible under the good-faith exception found in 
Leon
.  Since the search warrant in this case was obtained pursuant to a statutory provision that we have determined was unconstitutional, the provisions of our State constitution require that the evidence obtained against the defendant as a result of the search in this case must be suppressed.  
Krueger
, 175 Ill. 2d at 73-74; Ill. Const. 1970, art. I. §6.

Nonpublishable material under Supreme Court Rule 23 omitted.

We therefore reverse the order of the trial court denying the defendant’s motion to quash the search warrant.  We also reverse and remand the cause for a new trial on the unlawful possession of a controlled substance charge.  We reverse the trial court’s findings of not not guilty on the offenses of armed violence and criminal fortification of a residence.

The judgment of the circuit court is reversed in part and reversed and the cause remanded in part.

Reversed, reversed in part, and remanded in part.

GEIGER, P.J., and INGLIS, J., concur.