**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240572-U

Order filed December 8, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0572 Circuit No. 22-CF-366 |
| | ) | |
| RANDOLPH D. JEFFRIES, | ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Holdridge and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  (1) The evidence was sufficient to sustain defendant's conviction for armed violence. (2) Defendant's convictions violated the one-act, one-crime doctrine.

¶ 2        Defendant, Randolph D. Jeffries, appeals from his convictions for armed violence and burglary. Defendant argues the evidence was insufficient to sustain his conviction for armed violence, and alternatively, his convictions violated the one-act, one-crime doctrine. We affirm in part and vacate in part.

I. BACKGROUND

¶ 4        On September 20, 2022, the State charged defendant by information with armed violence predicated on burglary (720 ILCS 5/33A-2(a) (West 2022)) and burglary (*id.* § 19-1(a)). On July 9, 2024, the matter proceeded to a bench trial, and the following pertinent evidence was presented.

¶ 5        Benjamin Ruiz testified he lived in Ottawa, Illinois in an apartment above Ruiz Construction, a business owned by his father, Michael Ruiz. On September 18, 2022, Benjamin arrived home between 10 and 10:30 p.m. and recalled there was a thunderstorm. He went upstairs to his apartment, did not turn on any lights, and watched television. Approximately 20 minutes later, he heard a noise and assumed it was a cat or the wind. He then heard two more loud noises and looked through the glass door of his apartment into the garage bay. He saw two flashlights being used to look at tools and an individual taking items outside. He called the police. The police arrived a minute later, and the individuals ran away. Benjamin observed that a window above a freestanding sink was broken, the sink was knocked over, the door used to carry tools outside remained open, and tools were scattered outside.

¶ 6        Michael testified he owned Ruiz Construction. His company used the subject building daily—employees would check in and out, pick up tools, and store tools in the building. The building had an office in the front and an apartment upstairs. On the night at issue, Benjamin contacted Michael regarding a potential burglary. Michael met with the police and noticed many tools were missing. Michael also noticed the shotgun he stored in his office closet was missing. Michael noted, while his building had security cameras, the footage was obscured by the rain.

¶ 7        Jayden Hawley, a former sheriff's deputy for the La Salle County Sheriff's Office, testified he was dispatched to Ruiz Construction that night for a potential burglary, and upon his arrival, he observed a red Chrysler van fleeing from the property. At that time, an officer with the Ottawa

Police Department arrived on the scene, and Hawley and the officer followed the van. After a pursuit of approximately a quarter of a mile, the van hit a decorative rock and came to a stop. A passenger fled. Hawley did not see the driver flee based on his point of view. However, a woman in the passenger seat and another woman found in the trunk were placed in custody. The van's front license plate was covered with duct tape, and the inside was full of tools marked "Ruiz Construction."

¶ 8        Noah Rowe, a deputy with the La Salle County Sheriff's Office, testified he was on patrol when he was dispatched to Ruiz Construction for a burglary in progress. Inside the building, he noticed open cabinets and closets and shelves that were empty. He noted the broken window and observed on the outside of the window that there were tire tracks in the grass, muddy footprints, and a plastic barrel on its side.

¶ 9        Michael Kasprak, a master sergeant with the Illinois State Police, testified he was on routine patrol on Interstate 80 during the evening at issue. At approximately 12:13 a.m., he received a call from dispatch regarding a pedestrian, later identified as defendant, walking on the shoulder of the interstate. Kasprak drove to the location and observed defendant walking on the entrance ramp. Kasprak asked defendant about his situation and defendant stated, "I am who you are looking for" and explained he was trying to find a police station to turn himself in. Kasprak did not know what defendant was talking about, placed defendant in handcuffs, and put him in the front seat of his squad car. Kasprak asked defendant questions to ascertain the situation, and defendant stated he had been at a gas station when his van was stolen and the van was further down the interstate. Kasprak drove toward that location and noticed an Ottawa squad car on the shoulder of the interstate with its emergency lights on. Kasprak learned from the other officer that the perimeter was being secured as part of a burglary investigation and the officer had already spoken

3

to defendant and released him. Defendant was then questioned by the officers about the burglary. Defense counsel asked the court to suppress the statements defendant made to the police once Kasprak placed defendant in the squad car, which the court granted.

¶ 10        Kye Denault, a detective with the La Salle County Sheriff's Office, interviewed defendant. Initially, defendant stated he was the driver of the van and backed the van toward the subject building. During a later interview, defendant stated he had further involvement and assisted with loading items into the van. Defendant denied knowing anything about the stolen shotgun but stated he had his own firearm in the van's center console. Defendant stated he typically did not carry his firearm with him but he specifically had it that night for protection during the burglary. Defendant also explained how the events transpired that night. Defendant drove his van with his girlfriend and her daughter to pick up Monkey, his girlfriend's cousin. Monkey asked defendant to help him with a pickup and told defendant where to go. Defendant stated neither he, his girlfriend, nor her daughter entered the building, but Monkey entered through the window. Defendant loaded equipment into the van and knew it was wrong, which was why he was looking for a police station to turn himself in. Defendant stated he used duct tape to conceal his license plate, and he agreed to help Monkey because he needed money.

¶ 11        Defendant consented to a search of the van. The search revealed numerous tools and Michael's shotgun. The photographs admitted into evidence demonstrated the rear and center of the van were full and piled to the van's roof with construction tools. Further, there were also tools placed on the floor between the back passenger seats and the front seats. The police also found a loaded firearm in the center console that was inside a holster. The photograph admitted into evidence showed the holstered firearm was inside the center console on the top.

4

¶ 12        Following arguments, the circuit court found defendant guilty of armed violence and burglary. Thereafter, defendant filed a motion to reconsider or for a new trial, arguing the evidence was insufficient. The court denied the motion and sentenced him to concurrent terms of 15 years' imprisonment and 5 years' imprisonment, respectively. This appeal followed.

¶ 13                              II. ANALYSIS

¶ 14        On appeal, defendant argues the evidence was insufficient to prove his guilt of armed violence, and alternatively, his convictions violated the one-act, one-crime doctrine. We address each contention in turn.

¶ 15                        A. Sufficiency of the Evidence

¶ 16        When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. The trier of fact determines the credibility of the witnesses, assigns weight to the testimony, resolves conflicts in the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. A conviction will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 17        A person commits armed violence when, "while armed with a dangerous weapon," he commits a felony, with certain exceptions inapplicable here. 720 ILCS 5/33A-2(a) (West 2022)). A person is "armed with a dangerous weapon" if he "carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." *Id.* § 33A-1(c)(1). Our supreme court has defined "otherwise armed" to mean the person had immediate access to or timely control over a weapon. *People v. Condon*, 148 Ill. 2d 96, 110 (1992). The purpose of this

statute is to deter felons from using dangerous weapons and avoid the deadly consequences that may result when a felony victim resists. *Id.* at 109. For instance, "[a] felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force." *Id.*

¶ 18   Here, defendant was charged with armed violence in that he committed a burglary while armed with a dangerous weapon. Defendant agrees his firearm is a qualifying weapon but disputes that he had immediate access to or timely control over the firearm.

¶ 19   We conclude the evidence was sufficient to establish that defendant was armed with a dangerous weapon when he committed the burglary. The evidence demonstrated defendant backed his van up to the building and carried tools from inside the building into his van. Photographs admitted into evidence showed the tools inside the van were piled high throughout the rear and center of the van and were also on the floor between the back and front seats. Based on the placement of the tools inside the van, one could reasonably infer that both the van's trunk door and rear passenger doors were accessed to load the tools into the van. Defendant's firearm was in a holster inside the center console between the driver's seat and front passenger seat. Photographs of the inside of the center console showed the holstered firearm sitting on the top. Thus, it would be reasonable to find that defendant had immediate access to or timely control over the firearm during the burglary. See *People v. Harre*, 155 Ill. 2d 392, 400-01 (1993) (the defendant had immediate access to or timely control over the firearm sitting on the front seat of the vehicle where the defendant was standing outside the vehicle and the window was more than half opened because the defendant could have reached through the window or opened the door); *People v. Norwood*, 2018 IL App (4th) 150883, ¶¶ 5, 35 (the defendant had immediate access to the firearm located behind a storage container that was within several feet of him); *People v. Scott*, 2011 IL App (2d)

100990, ¶ 30 (the defendant had immediate access to or timely control over the firearm located under the cushion of a sofa that was "a foot or two away" from the defendant's reach despite the inconvenient presence of a coffee table). The evidence supports the firearm was at defendant's disposal where he could have been confronted with a spontaneous and instantaneous decision to use it, the exact purpose for the enactment of the armed violence statute. Therefore, any rational trier of fact could have found defendant had immediate access to or timely control over the firearm, and accordingly, that he was armed with a dangerous weapon to satisfy the armed violence charge.

¶ 20 In reaching this conclusion, we address two cases defendant relies on to support his position that he did not have immediate access or timely control of his firearm. First, in *Condon*, 148 Ill. 2d at 110, the defendant was apprehended by the police when he was in his kitchen and officers found numerous firearms throughout the home in the first-floor bedroom and on the second floor. The court concluded the defendant was not armed with a dangerous weapon as "[i]t was impossible for the defendant to use the guns as they were situated because they were too far removed from the defendant." *Id.* Here, we cannot say that it would have been impossible for defendant to use the firearm as it was situated in such close proximity to defendant as he loaded the van. Defendant's distance from the firearm in this case is a far cry from the distance in *Condon*, where the defendant was separated from the firearms located in another room.

¶ 21 We likewise reject defendant's reliance on *People v. Wise*, 2021 IL 125392. In that case, the defendant was charged with unlawful possession of a weapon by a felon, and the supreme court relied on *Condon* as an analogue. *Id.* ¶ 29. The evidence demonstrated an officer pulled the defendant over, searched the vehicle, and found a firearm in the rear passenger area closest to another person in the vehicle. *Id.* ¶ 34. The court concluded the defendant did not possess the firearm, noting there was no evidence presented that the defendant owned the vehicle, the firearm

was found between 5 and 10 feet away from the defendant, the officer did not believe the defendant could reach the firearm, the crime laboratory did not determine that the defendant's fingerprints were on the firearm, and the firearm was closest to another person. *Id.* We conclude *Wise* is unpersuasive as applied to this case as it contains many facts that are not present here.

¶ 22                                B. One-Act, One-Crime Doctrine

¶ 23        Defendant alternatively argues that his conviction for burglary should be vacated under the one-act, one-crime doctrine, which provides that multiple convictions based on the exact same physical act are improper. *People v. King*, 66 Ill. 2d 551, 565-66 (1977). A violation of this doctrine constitutes plain error, and therefore, may be addressed for the first time on appeal. *People v. Coats*, 2018 IL 121926, ¶ 10. Our review is *de novo*. *Id.* ¶ 12.

¶ 24        Defendant contends his convictions arose from the same physical act because burglary was the predicate felony for his armed violence conviction (citing *People v. Donaldson*, 91 Ill. 2d 164, 170 (1982) (the defendant's convictions for armed violence and aggravated battery causing great bodily harm violated the one-act, one-crime doctrine where the defendant could not violate the armed violence statute without first committing the battery)). The State concedes that defendant's burglary conviction should be vacated on this basis. We agree as burglary was an element of armed violence and the two convictions arose out of the same physical act. Judgment should have only been entered on the more serious offense, which is armed violence. *Id.* Thus, we vacate defendant's conviction for burglary and the accompanying sentence.

¶ 25                                    III. CONCLUSION

¶ 26        The judgment of the circuit court of La Salle County is affirmed in part and vacated in part.

¶ 27        Affirmed in part and vacated in part.

8