NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210602-U

NO. 4-21-0602

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 1, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRIAN HUNTER, | ) | No. 20CF216 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann |
| | ) | Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   There was sufficient evidence to prove defendant guilty beyond a reasonable doubt of armed violence, and the trial court did not abuse its discretion in sentencing him to 20 years' imprisonment on that count. However, we vacate defendant's conviction of possession of methamphetamine under the one-act, one-crime rule. We also vacate defendant's conviction of aggravated unlawful use of a weapon because the portion of the statute under which defendant was charged has been held unconstitutional. We therefore affirm in part and vacate in part.

¶ 2         Following a bench trial, defendant, Brian Hunter, was convicted of armed

violence (720 ILCS 5/33A-2(a) (West 2020); 720 ILCS 646/60 (West 2020)) (count I),

possession of a firearm with defaced identification marks (720 ILCS 5/24-5(b) (West 2020))

(count II), possession of methamphetamine (720 ILCS 646/60(a) (West 2020)) (count IV),

aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(2), (a)(3)(B) (West 2020)) (count

V), and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2020)) (count

VI). The trial court sentenced him to 20 years' imprisonment. On appeal, defendant argues that he was not proven guilty of armed violence beyond a reasonable doubt. He alternatively argues that his conviction of possession of methamphetamine should be vacated under the one-act, one-crime rule; that his conviction of aggravated unlawful use of a weapon should be vacated because the underlying statute for the offense was held unconstitutional in *People v. Mosley*, 2015 IL 115872; and that his 20-year sentence is excessive.

¶ 3        We conclude that defendant was proven guilty beyond a reasonable doubt of armed violence but that his convictions of possession of methamphetamine and aggravated unlawful use of a weapon should be vacated. We further conclude that the trial court did not abuse its discretion in sentencing defendant to 20 years' imprisonment. We therefore affirm in part and vacate in part.

¶ 4                              I. BACKGROUND

¶ 5        On August 31, 2020, defendant was charged in a six-count information with the aforementioned counts as well as possession of a firearm without the requisite firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2020)) (count III).

¶ 6        Defendant's bench trial took place on May 3, 2021. We summarize the testimony of Matthew Howard of the Livingston County Sheriff's Department. Howard was driving in Streator on August 28, 2020, at about 4:30 p.m., when he noticed a silver BMW with California plates and a cracked windshield. Howard followed the car to South Post Guns Store. He ran the registration of the car, which came back to defendant. The Livingston County Sheriff's Department had previously received an e-mail from the Streator police to be on the lookout for defendant and his vehicle, with information about him possessing methamphetamine and firearms.

¶ 7        Defendant went into the gun store for about 10 minutes, returned to his car for a little while, retrieved a backpack, and went back into the store. Defendant was in the store for a few minutes and then began walking east. Howard stopped defendant four or five blocks away, and the recording from the squad car was played for the trial court.

¶ 8        The recording shows Howard asking defendant for his identification. Defendant puts his backpack on the ground, walks a few feet towards Howard, and gives him his identification. Howard says that he was going to stop defendant previously because the car's windshield was cracked. He also says that it was suspicious that defendant went into the gun store twice and then left his vehicle in the parking lot. Deputy Sam Fitzpatrick arrives, and defendant moves closer to his position, which is closer to the backpack. Howard goes back to his squad car to check the identification. While they are speaking, defendant and Fitzpatrick walk several yards away from the backpack. A police officer arrives and joins them. Howard then arrests defendant for driving on a revoked license and handcuffs him. Defendant tells Howard that there is a gun clip in his pocket and a gun in his backpack.

¶ 9        Deputy Howard testified that a search of defendant's backpack revealed a Glock handgun and a Springfield pistol, both with loaded magazines. The serial numbers on the Glock were scratched off. The backpack also contained drug paraphernalia, an additional magazine, 50 rounds of ammunition, and multiple cell phones, one of which had what appeared to be methamphetamine in the battery compartment.

¶ 10       Forensic testing showed that the drugs totaled 3.4 grams of methamphetamine.

¶ 11       Detective Zachary Benning of the Livingston County Sheriff's Department testified that he spoke to defendant in a recorded interview on September 9, 2020, after having spoken to him two times prior. The recording was played in open court. In the interview,

defendant admitted possessing the guns and methamphetamine, though he said that the cell phone with the methamphetamine was in the car. Defendant stated that he had been living out of his car in California and was using the Glock for protection. Defendant further stated that the Springfield gun belonged to a friend, and defendant had been planning to return it to him.

¶ 12    The trial court found defendant guilty of all counts except possession of a firearm without a FOID card. On the subject of aggravated unlawful use of a weapon, the trial court noted that the evidence showed that there were two handguns, several magazines, ammunition, and methamphetamine in the backpack that defendant was carrying with him, stating, "[N]ot only did [defendant] have the weapon uncased in the bag, but the ammunition for that weapon was immediately accessible from the bag." Defendant said that there was methamphetamine in the car, but there was also methamphetamine in the smoking pipes which were located in the backpack with the weapons. To the extent that defendant's statements conflicted with the statements of law enforcement officers, the trial court found that the officers' testimony was more credible.

¶ 13    Defendant filed a motion for a new trial on June 7, 2021, arguing that the evidence was insufficient and that the trial court improperly considered that the drug pipes were found in the same bag as the guns, as the pipes were not tested for drugs. The trial court denied the motion on June 24, 2021.

¶ 14    Defendant's sentencing hearing took place on August 9, 2021. The trial court stated as follows. In aggravation, defendant had a prior criminal record, which included driving under the influence and unlawful use of a weapon. Here, the weapon was in close proximity to methamphetamine, ammunition, and magazines. There was a threat of harm because "[w]hen you are walking around completely high out of your mind with a weapon and ammunition, bad

things can happen." There was no actual violence here, but there was certainly a threat of harm involved. Deterrence was also a strong factor. In mitigation, defendant had a drug habit, had been living out of his car, and had returned to Illinois to reestablish a connection with his daughter. The minimum sentence for armed violence was 15 years, but a minimum sentence was not appropriate based on the aggravating factors. Rather, 20 years was a reasonable sentence, and defendant was eligible for 50% good time credit plus another six months of good time credit. The trial court imposed a sentence of five years' imprisonment on counts II and IV, and three years' imprisonment on count V, to run concurrently. It stated that count VI was a misdemeanor on which it would enter a conviction plus costs.

¶ 15        This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17            A. Sufficiency of the Evidence for Armed Violence Conviction

¶ 18        Defendant first argues that the State failed to prove beyond a reasonable doubt that he was guilty of armed violence, where the evidence established that there was no imminent threat of violence.

¶ 19        When examining the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so unreasonable, improbable, or

- 5 -

unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 20        A person commits armed violence when, while "armed with a dangerous weapon," he commits a felony, with certain exceptions not relevant here. 720 ILCS 5/33A-2(a) (West 2020). A person is armed with a dangerous weapon if he or she "carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS 5/33A-1(c)(1) (West 2020). A handgun is a category I weapon. 720 ILCS 5/33A-1(c)(2) (West 2020). Our supreme court has defined "otherwise armed" to mean the person had immediate access to or timely control over a weapon. *People v. Condon*, 148 Ill. 2d 96, 110 (1992). Defendant was charged with armed violence for knowingly possessing methamphetamine while armed with a handgun.

¶ 21        The legislative findings of the armed violence statute state that the use of a dangerous weapon in committing a felony creates a much greater threat to the public health, safety, and general welfare than when a weapon is not used; "the use of a firearm greatly facilitates the commission of a criminal offense because of the more lethal nature of a firearm and the greater perceived threat produced in those confronted by a person wielding a firearm," including victims, bystanders, and "the law enforcement officers whose duty is to confront and apprehend the armed suspect"; and the legislature had created greater penalties for felonies committed while in possession of a firearm because it deems such acts more serious. 720 ILCS 5/33A-1(a) (West 2020).

¶ 22        Our courts have also discussed the reasons behind the armed violence statute. The purpose of the armed violence statute is to deter felons from using dangerous weapons so as to minimize the deadly consequences if a felony victim resists. *People v. Smith*, 191 Ill. 2d 408,

411-12 (2000). That is, a "felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force." *Condon*, 148 Ill. 2d at 109. "The purpose of the armed-violence statute is to minimize the potential for such violence by disarming felons, thus eliminating the need for them to decide, in the heat of the moment, whether to resort to deadly force." *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 23.

¶ 23　　　　　Defendant cites *Smith*, 191 Ill. 2d at 408. There, the defendant dropped an unloaded gun out of his apartment window as the police approached the building to execute a search warrant on the defendant's apartment. *Id.* at 410. The police recovered the gun outside and found drugs inside the apartment. *Id.* The supreme court reversed the defendant's conviction of armed violence on the basis that he did not have immediate access to and timely control over the gun when the police entered, as he had already dropped the gun out of the window. The court stated that for the same reasons, the defendant did not have intent and capability to maintain control over the weapon. *Id.* at 412. The court stated that:

> "Permitting an armed violence conviction to stand against a felon such as [the] defendant, who exhibited no propensity to violence and dropped the unloaded gun out of the window as the police approached his apartment to search for drugs, would not serve, but rather would frustrate, the statute's purpose of deterring criminals from involving themselves and others in potentially deadly situations." *Id.* at 412-13.

See also *Condon*, 148 Ill. 2d at 110 (reversing the defendant's conviction of armed violence where there were guns in the house but not on the defendant or in the kitchen where he was found).

¶ 24        Defendant contrasts *Smith* with *People v. Harre*, 155 Ill. 2d 392 (1993). In *Harre*, the defendant was next to the passenger side door of a car, where the window was more than half open. *Id.* at 395. There were two guns in the car's front seat. The supreme court stated that the defendant's conviction of armed violence was supported by the testimony of two officers that the guns were within the defendant's immediate reach. *Id.* at 396. Further, the defendant had taken two steps towards the car door and was parallel to it when he stopped due to an officer's command, such that he was just about to open the car door and have unrestricted access to the weapons. *Id.* at 400-01. The supreme court rejected the defendant's argument that he was not guilty of armed violence because he did not reach for the guns. The court stated that "the determination of whether a defendant is armed is not made at the moment of arrest," but rather that "armed violence occurs if a defendant commits a felony while having on or *about* his person a dangerous weapon or if a defendant is *otherwise* armed." (Emphases in original.) *Id.* at 401.

¶ 25        Defendant argues that in this case, there was no evidence that he intended to use a weapon or that he had a propensity for violence. Defendant maintains that he was cooperative with the officers and displayed no aggressive or threatening behavior. Defendant argues that, most tellingly, he put the backpack on the ground when Howard first made contact with him and then walked several yards away from the bag when Howard checked his identification. Defendant argues that he also informed the officers that he had a weapon in his backpack as soon as he was arrested for driving on a revoked license.

¶ 26        Defendant contends that, therefore, "the danger that the armed violence statute seeks to curb was not present" (*People v. Neylon*, 327 Ill. App. 3d 300, 309 (2002)) in this case. Defendant argues that as in *Smith*, he relieved himself of the weapons upon the approach of the police. Defendant argues that the fact that the weapons were in a zipped bag is significant, as in

*People v. Shelato*, 228 Ill. App. 3d 622, 624, 627 (1992) (insufficient evidence of armed violence where the gun was in a zippered duffle bag, wrapped in a rag, and underneath 68 bags of marijuana). Defendant asserts that he would have had to move his body, unzip the bag, and rummage through the contents to access the guns and create a dangerous environment. Defendant argues that the idea that he could have done so "under the watchful eye" of police officers "simply defies common sense" (*Shelato*, 228 Ill. App. 3d at 628). Defendant maintains that such a deliberate and drawn-out retrieval of a weapon is not the "spontaneous" and "instantaneous" decision to use deadly force that lawmakers were concerned about in creating the armed violence statute. See *Condon*, 148 Ill. 2d at 109.

¶ 27      Defendant additionally argues that he was not involved in a dangerous criminal activity that the armed violence statute was intended to target. He argues that he was not a drug dealer, the 3.4 grams of methamphetamine he possessed was sufficient only for personal use, and the drug paraphernalia in his bag indicated that he was using the drugs himself. Defendant maintains that it would not make sense to use the armed violence statute to punish an individual for substance abuse when he posed no threat to the community. He notes that if he had been carrying a bottle of liquor instead of methamphetamine, he could not even be charged with armed violence.

¶ 28      The State argues that because defendant admitted to possessing both the methamphetamine and the two firearms in his backpack that he was carrying on his person when he was stopped by a police officer, the State presented sufficient evidence that defendant, while armed with a dangerous handgun, committed the felony of possessing methamphetamine. The State argues that although defendant asserts that he was several yards away from the backpack, the dash camera shows that defendant had the backpack in his immediate possession at the

beginning of the encounter and had the ability to immediately access the backpack and firearms for several minutes before he was arrested.

¶ 29    We note that although defendant focuses on the lack of evidence in the case that he intended to use a gun or that he had a propensity for violence, intent is not an element of the armed violence statute. See 720 ILCS 5/33A-2 (West 2020). Rather, "it is the possibility of violence, and not the defendant's actual intent to commit or threaten violence, that is crucial." *People v. Scott*, 2011 IL App (2d) 100990, ¶ 20. A defendant may be found guilty of armed violence even if the gun is unloaded and no ammunition is found in the gun or on the defendant's person. *People v. Anderson*, 364 Ill. App. 3d 528, 542 (2006); see also *People v. Orsby*, 286 Ill. App. 3d 142, 149 (1996) (the statute does not require that a handgun be loaded to qualify as a dangerous weapon).

¶ 30    Defendant also emphasizes that he put the backpack on the ground and moved away from it, and that when he was arrested, he informed the officers that he had a weapon. However, as the supreme court stated in *Harre*, 155 Ill. 2d at 401, "the determination of whether a defendant is armed is not made at the moment of arrest." Similarly, in *Loggins*, 2019 IL App (1st) 160482, ¶ 42, the court stated that even if the defendant had distanced himself from the gun, "it was too late for him to escape liability for armed violence." The court stated that "[a]s long as he was 'otherwise armed' at *some* point during his confrontation with the police, which he was, he committed the offense—even if he abandoned the handgun soon after that." (Emphasis in original.) *Id.*; see also *People v. Calloway*, 2019 IL App (1st) 160983, ¶ 52. As *Loggins* explained, the purpose of the armed violence statute is to deter felons from carrying weapons so that there is no need for the felon to instantaneously decide whether to use deadly force, thereby decreasing the potential for violence. *Loggins*, 2019 IL App (1st) 160482, ¶ 23.

¶ 31        This case is distinguishable from *Shelato*, 228 Ill. App. 3d at 627. There, the gun was wrapped in a rag and underneath 68 bags of drugs, so it was not immediately accessible to or within the timely control of the defendant. This case is also inapposite to *Smith* because the defendant in that case had dropped the gun out of the window and would not have been able to access it "when the police entered." *Smith*, 191 Ill. 2d at 412. Here, defendant was carrying the backpack for about 15 seconds from the time Howard stopped the police car and was still holding it when Howard approached him, and additionally defendant was within a few feet of the bag for over two minutes afterwards. Defendant therefore had immediate access to or timely control over the guns and was thus "otherwise armed" within the meaning of the armed violence statute while committing the felony of possessing methamphetamine. Accordingly, there was sufficient evidence to prove defendant guilty of armed violence beyond a reasonable doubt.

¶ 32                                B. One-Act, One-Crime Rule

¶ 33        Defendant alternatively argues that his conviction of possession of methamphetamine should be vacated under the one-act, one-crime rule enunciated in *People v. King*, 66 Ill. 2d 551 (1977). Under this rule, multiple convictions are improper if they are based on the exact same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11. A violation of the one-act, one-crime rule constitutes plain error and may be addressed for the first time on appeal. *Id.* ¶ 10. Whether such a violation has occurred is a question of law that we review *de novo. Id.* ¶ 12.

¶ 34        Defendant argues that his convictions of armed violence and possession of methamphetamine arose from the same physical act because possession of methamphetamine was a critical element in both offenses. Defendant cites *People v. Curry*, 2018 IL App (1st) 152616, ¶ 28, where the reviewing court stated that the trial court erred in convicting the

defendant of intent to deliver heroin and armed violence, as the two convictions arose out of the same physical act and the drug conviction was a lesser-included offense of the armed violence conviction. It therefore vacated the drug conviction under the one-act, one-crime rule. *Id.* ¶ 33.

¶ 35 The State concedes that defendant's conviction of possession of methamphetamine should be vacated pursuant to the one-act, one-crime doctrine, and we agree. As in *Curry*, defendant's possession of methamphetamine was an element of his conviction of armed violence, and the two convictions arose out of the same physical act. We therefore vacate defendant's conviction of possession of methamphetamine, as well as the sentence for that offense.

¶ 36 C. Aggravated Unlawful Use of a Weapon

¶ 37 Defendant argues that his conviction of aggravated unlawful use of a weapon, as charged, should also be vacated because the underlying statute for the offense was held unconstitutional. Defendant initially cites *People v. Aguilar*, 2013 IL 112116. There, our supreme court examined a portion of the aggravated unlawful use of a weapon statute, specifically the class 4 form of subsection 24-1.6(a)(1), (a)(3)(A), (d) of the Criminal Code (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)). *Aguilar*, 2013 IL 112116, ¶ 15. That part of the statute stated that a person commits aggravated unlawful use of a weapon if he or she knowingly "carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm," and "the firearm possessed was uncased, loaded and immediately accessible at the time of the offense." *Id.* Our supreme court held that the class 4 form of this portion of the statute was facially unconstitutional because it "categorically prohibits the possession and use of an operable firearm for self-defense outside the home," contrary to the

second amendment right to keep and bear arms. *Id.* ¶ 20. In *People v. Burns*, 2015 IL 117387, ¶ 25, the supreme court expanded its holding in *Aguilar* and stated that the discussed portion of the statute was facially unconstitutional without limitation to class 4 felonies.

¶ 38       Defendant additionally cites *Mosley*, 2015 IL 115872, ¶¶ 3, 25, in which the supreme court, consistent with *Aguilar*, held that section 24-1.6(a)(2), (a)(3)(A) of the Criminal Code (720 ILCS 5/24-1.6(a)(2), (a)(3)(A) (West 2012)), which prohibited carrying an uncased, loaded, and immediately accessible firearm on a public way (as compared to in a vehicle or one's person as in *Aguilar*), was also unconstitutional.

¶ 39       Defendant points out that he was convicted under section 24-1.6(a)(2), (a)(3)(B), which bars possession of an unloaded gun and ammunition on a public way as opposed to the loaded gun in a public way at issue in *Mosley*. Defendant argues that as subsection (a)(3)(A) is unconstitutional, subsection (a)(3)(B) must also be unconstitutional, as it would be illogical to conclude that the possession of a loaded gun is constitutionally protected but the possession of an unloaded gun is not.

¶ 40       The State agrees with defendant's reasoning and that his conviction of aggravated unlawful use of a weapon pursuant to subsection (a)(3)(B) should be vacated. We agree as well. We additionally note that in *People v. Daniels*, 2017 IL App (1st) 142130-B, ¶ 12, the court held that *Aguilar*'s rationale extended to section 24-1.6(a)(2), (a)(3)(B) (720 ILCS 5/24-1.6(a)(2), (a)(3)(B) (West 2004)), which is the same section at issue in this case. The *Daniels* court stated that "[u]pholding a conviction under subsection (a)(3)(B) would illogically prohibit the possession of an *unloaded* gun in the same situation where, under *Aguilar*, the possession of a *loaded* gun is constitutionally protected." (Emphases in original.) *Id.* "A conviction pursuant to a

- 13 -

facially unconstitutional statute must be vacated." *Id.* ¶ 14. We therefore vacate defendant's conviction of aggravated unlawful use of a weapon and its corresponding sentence.

¶ 41                                              D. Sentencing

¶ 42          Last, defendant argues that the trial court abused its discretion in sentencing him to 20 years' imprisonment, which is 5 years more than the minimum 15-year sentence. Defendant argues both that the trial court considered improper aggravating factors and that the sentence is excessive in light of the nature of the offenses and his minimal criminal history.

¶ 43          Regarding improper aggravating factors, defendant argues that the trial court had the mistaken belief that the legislature wanted it to impose a harsher sentence because the offense was non-probationary. Defendant highlights that the court stated that the lack of probation as a sentencing option meant that the "legislature want[ed] [it] to take this crime, armed violence, very seriously and give a stronger penalty than usual for most other offenses." Defendant argues that the trial court's unsupported assumption about the legislature's intent makes little sense and leads to absurd results, as the minimum sentence could never be imposed for any offenses which are non-probationary. Defendant maintains that the legislature's intent to impose a "stronger penalty" for armed violence is reflected by the fact that the minimum sentence is 15 years.

¶ 44          Defendant argues that the trial court also considered as an improper aggravating factor that his prior conviction of unlawful use of a weapon was a "violent offense" by "its own nature." Defendant argues that this is simply untrue considering that unlawful use of a weapon on its own is strictly a victimless, possession offense. See 720 ILCS 5/24-1(a)(4) (West 2020).

¶ 45          Defendant recognizes that he did not preserve these alleged errors for review because he did not include them in his motion to reconsider sentence (see *People v. Enoch*, 122

- 14 -

Ill. 2d 176, 186 (1988)), but he argues that they constitute plain error or ineffective assistance of counsel.

¶ 46    Defendant additionally argues that his sentence was excessive. He maintains that the statute criminalizing armed violence was not intended to target nonviolent individuals such as himself, as he was not about to engage in any dangerous criminal activity when the police pulled him over and had only a small amount of drugs. Defendant notes that he was cooperative during the police encounter and advised them about the guns when he was arrested. Defendant argues that he had been crime-free for 10 years before this incident and that all of his prior convictions (two misdemeanors for driving under the influence of alcohol from 2006 to 2010, one misdemeanor for possession of cannabis from 2002, one felony for unlawful use of a weapon from 1998, and one misdemeanor for consumption of alcohol by a minor from 1998) largely involved substance abuse and consisted of victimless offenses. Defendant argues that this instant offense was similar, and his unfortunate life circumstances explained why he turned to drugs. Defendant points to his statement to the court that he had been employed as a hospital equipment technician but lost work due to the pandemic; that he returned to Illinois to be with his daughter; and that when he was not allowed to see his daughter, he became depressed and started hanging out with "old friends with bad habits" and using methamphetamine. Defendant argues that neither the facts of the offense nor his background warrants a sentence 5 years above the minimum sentence of 15 years' imprisonment.

¶ 47    A trial court has wide latitude in sentencing a defendant as long as it does not ignore relevant mitigating factors or consider improper aggravating factors. *People v. McGee*, 2020 IL App (2d) 180998, ¶ 8. The weight to be given to these factors depends on the circumstances of each case. *People v. Ferguson*, 2021 IL App (3d) 200041, ¶ 12. A reviewing

- 15 -

court gives substantial deference to the trial court's sentencing decision because the trial court has observed the defendant and the proceedings and is therefore in a much better position to consider the sentencing factors. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 9. We therefore accord great deference to a sentence within the appropriate sentencing range. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 66. We will not disturb the trial court's sentencing decision absent an abuse of discretion, which occurs only where the sentence is greatly at variance with the law's spirit and purpose, or manifestly disproportionate to the nature of the offense. *Brown*, 2018 IL App (1st) 160924, ¶ 9. We may not substitute our judgment for that of the trial court just because we would have weighed sentencing factors differently. *Colon*, 2018 IL App (1st) 160120, ¶ 66. Whether a trial court relied on an improper aggravating factor in sentencing is a question of law that we review *de novo*. *People v. Matute*, 2020 IL App (2d) 170786, ¶ 53.

¶ 48    Defendant also invokes the plain error doctrine, which allows a reviewing court to consider an unpreserved error where either (1) a clear error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) a clear error occurs that is so serious that it affected the trial's fairness and challenged the integrity of the judicial process. *People v. Sebby*, 2017 IL 119445, ¶ 48. The first step in a plain error analysis is to determine whether a clear or obvious error occurred. *People v. Jackson*, 2022 IL 127256, ¶ 21.

¶ 49    We first examine the alleged improper aggravating factors. "When we review a sentence for an alleged error based upon the consideration of an improper factor in aggravation, we consider the record as a whole and do not focus merely on a few words or statements from the trial judge." *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18. We conclude that the record as a whole shows that in mentioning a "stronger penalty," the trial court was commenting on the

legislature's decision to make the crime non-probationary and have a 15-year minimum sentence. The trial court stated:

> "And here even though there are mitigating factors, this is not a minimum sentence case, despite the fact that the minimum is 15 years which I recognize is a very stiff sentence. So I do think given the aggravating factors in this case that the sentence of 20 years as recommended by the State is a reasonable sentence."

Accordingly, the trial court recognized that it could impose a 15-year sentence but stated that the minimum sentence was not appropriate given the aggravating factors, and it ultimately agreed with the State's recommendation of a 20-year sentence.

¶ 50    As for defendant's prior conviction of unlawful use of a weapon, defendant takes issue with the trial court's statement that "whenever you are talking about weapons, possession of weapons without the appropriate FOID card and other documentation that's needed that that is by its own nature a violent offense. It's a weapon." In context, the trial court was commenting that offenses with weapons create a threat of harm. The trial court was allowed to consider defendant's prior record as an aggravating factor (see 730 ILCS 5/5-5-3.2(a)(3) (West 2020)), and it did not use the prior conviction at issue as an improper aggravating factor.

¶ 51    As we have found that the trial court did not consider any erroneous aggravating factors, there can be no plain error (*People v. Rodriguez*, 2022 IL App (1st) 200315, ¶ 108 (stating where there is no error, there can be no plain error)) or ineffective assistance of counsel for not raising an unmeritorious issue (*People v. Sims*, 2022 IL App (2d) 200391, ¶ 162).

¶ 52    Finally, we hold that the trial court did not abuse its discretion in sentencing defendant to 20 years' imprisonment. We have already concluded that there was sufficient evidence to prove defendant guilty beyond a reasonable doubt of armed violence, despite his

alleged lack of intent of violence and the fact that no violent actions took place. The trial court determined that the minimum sentence of 15 years was not appropriate given defendant's criminal history, which included a weapons offense. The trial court also noted that in the specific facts here, the weapons were in close proximity to methamphetamine, ammunition, and magazines, which created the potential for defendant to have access to the weapons when he was under the influence of drugs, leading to a threat of harm. The trial court further pointed to the factor of deterrence. The trial court recognized the presence of various mitigating factors, including defendant's drug habit, that he had been living out of his car, and that he had returned to Illinois to see his daughter. As the imposition of the 20-year sentence was in the trial court's decision and supported by the record, there is no basis to reverse the sentence on appeal.

¶ 53                                    III. CONCLUSION

¶ 54          For the reasons stated, we affirm in part and vacate in part the judgment of the Livingston County circuit court.

¶ 55          Affirmed in part and vacated in part.